# SUPPLEMENT.

SHAW & SCHOONOVER, Appellees, v. JOHN JACOBS, Appellant.

1. **Bank Checks:** INDORSÉMENT IN BLANK: EFFECT OF: CUSTOM. Where a check upon a bank, drawn in favor of a payee named or bearer, was indorsed in blank by the payee, and delivered by him to the bank where he did business, which gave him credit therefor, *held*, that the title to the check passed to the bank, according to the law merchant, and that evidence to the effect that it is the custom of bankers, when a check is drawn upon one bank and presented to another, to give credit for the check, but that such credit is treated as a receipt merely, and not as payment, is not admissible to negative the ownership of the check by the bank receiving it.

2. ————: SIGNATURE OF INDORSER: GENUINENESS: EVIDENCE. In an action upon a check by the indorsee of the payee against the drawer, evidence as to the genuineness of the signature of the payee in the indorsement is properly excluded, where the payee has not denied the genuineness of his signature in writing, under oath, as provided by section 2730 of the Code.

3. **Sales:** FRAUD: EVIDENCE. In an action upon a check given for hogs, it was shown that the payee warranted the hogs to be sound, but that some of them died soon after their removal from the payee's yard to that of the drawer. It was not shown that the hogs were infected when sold, nor of what disease they died, nor that the payee knew that the hogs were diseased at the time of the sale. *Held*, that there was no evidence to submit to the jury upon the question of fraud in the sale of the hogs.

### UPON REHEARING.

**Pleading:** GENUINENESS OF SIGNATURE TO WRITTEN INSTRUMENT: EVIDENCE. The genuineness of a signature to a written instrument may be put in issue by a denial, under oath, by a party other than the person whose signature it purports to be, and the burden of proof as to such issue will be upon the party making the denial.

(713)

*Appeal from Jones District Court.*—Hon. J. H. Pres-
ton, Judge.

Tuesday, May 23, 1893.

Action to recover the amount of a check drawn by
the defendant. After the evidence on the part of the
defendant had been submitted, the court directed a
verdict for the plaintiffs, and rendered judgment for
the amount of the verdict, which was returned as
ordered. The defendant appeals.—*Affirmed.*

*Sheean & McCarn* and *M. W. Herrick,* for appel-
lant.

*Remley & Eranbrach,* for appellees.

Robinson, C. J.—The check upon which this
action is founded is as follows:
"$362.68.        "Monticello, Iowa, Oct. 17, 1890.
"*G. W. & G. L. Lovell, Bankers:*

"Pay Osborn Brothers, or bearer, three hundred
sixty-two, 68-100 dollars.
                                    "John Jacobs."
The petition alleges that the payees of the check,
in the usual course of business, transferred it to the
plaintiffs by writing thereon "Osborn Brothers;" that
it was forwarded through a bank in Dubuque to a bank
in Monticello, which presented it to G. W. & G. L.
Lovell for payment, but that payment was refused for
the reason that the defendant had ordered that pay-
ment be not made; and that the check was then duly
protested.

The answer alleges that the check was given to
pay the purchase price of one hundred and twenty-five
young hogs which were sold by Osborn Brothers to the
defendant; that, to induce him to purchase the hogs,

Osborn Brothers fraudulently and falsely stated that said hogs were perfectly sound and free from all disease, and warranted them to be so, well knowing at the time that they were not sound and free from disease; that the defendant relied upon such statements and warranty in making the purchase, and believed such statements to be true; that the hogs were not as represented and warranted, but at that time were infected with a fatal disease, which caused the death of one hundred and eighteen of the hogs purchased, and rendered the remaining ones worthless, by reason of which there was a total failure of consideration for the check. Damages [to other hogs of the defendant, and for services rendered and medicines used in attempting to cure the hogs, to the amount of three hundred and fifteen dollars, are also alleged. The answer denies that the plaintiffs are now the owners of the check, and avers that this action is brought for the benefit of Osborn Brothers, who are the sole parties in interest, for the purpose of avoiding the defense pleaded.

I. On the trial, the plaintiffs introduced in evidence the check, the indorsement thereon, and the certificate of protest, and rested. The defendant then offered testimony which showed that the check was given for hogs, as alleged in the answer. That while he was negotiating for them he told one of the Osborns that he would not have diseased hogs on his place for one thousand dollars, and that Osborn said: "They are just as sound as any hogs could be. We have had them for some time, and they eat well and do well." That he also said: "I warrant every pig to be as sound as any pig you ever had on your place." That the price was then agreed upon, and the hogs purchased were selected from a large number in the yard where they were kept. That the purchase was made Wednesday, and the hogs were received by him the next Satur-

*1. BANK checks: indorsement in blank: effect of: custom.*

day. That they began to die, and many of them were dead on the next Wednesday, and that, of the one hundred and twenty-five purchased of the Osborns, one hundred and eighteen died within three weeks from the time they were received. That twenty-three of his hogs not obtained from the Osborns also died, and that he incurred expense and performed labor in caring for the diseased hogs. The evidence on that branch of the case would have authorized the jury to find that there was a total failure of consideration for the check. No witnesses testified for the plaintiffs in regard to their ownership of it, but the defendant stated that he had a conversation with Mr. Schoonover in which the latter was asked why he did not return the check to the Osborns, and answered: "I did try to return it, but they wouldn't take it back," and "I don't know whether they are worth anything, but we are secured by their father." In regard to obtaining the check, Mr. Schoonover said: "Osborn came in after banking hours, threw down the check and asked, 'How is that?'" Schoonover looked at it, and said, "All right," and gave credit for it. When payment of the check was refused by the persons on whom it was drawn, the cashier of the Monticello bank, to which it had been sent for collection, informed Schoonover by telephone of the fact. In response the latter said: "Well, what have I got to do about it?" The Osborns transacted their banking business with the plaintiffs, but refused to take up the check until an attempt should be made to collect it by suit.

The defendant admits, in effect, that, if the plaintiffs are innocent purchasers of the check for value, they are entitled to recover its amount, but he insists that in law they are presumed to have taken it for collection only, with the right to return it when payment was refused. For the purpose of showing that such a presumption is authorized, he offered to prove by two

experienced bankers of Jones county that, by general custom of bankers in that county and elsewhere, a check drawn on one bank, when presented to another by one of its customers, was passed to his credit, but that the credit so given was treated as a receipt for the check, and not as a payment. The offered evidence was rejected. The appellant insists that it should have been received, and cites numerous authorities to show that, in the absence of a special agreement, when a bank receives from a depositor a check upon another bank for collection, if, without fault on the part of the bank receiving it, the collection is not made, that bank has the right to return the check, and cancel the credit for it which was given to the depositor. The custom which the defendant sought to prove would not have affected the right of the plaintiffs to stand upon their agreement with Osborn Brothers. That was shown by the check and the indorsement thereon set out in the petition. The check is in form a negotiable instrument. The transfer of such checks is governed in most respects by the rules applicable to negotiable promissory notes. Tied. Com. Paper, sec. 440; 2 Pars., Notes and Bills, 57 *et seq*. Notwithstanding the fact that the check in suit is payable to bearer, it was transferred by an indorsement in blank. By so indorsing it, the payees assumed the same liability they would have been under by such an indorsement, had the check been made payable to order. Tied. Com. Paper, secs. 257*a*, 270; *Bigelow v. Colton*, 13 Gray, 309; *Smith v. Rawson*, 61 Ga. 208; *Johnson v. Mitchell*, 50 Tex. 212; 1 Morse on Banks and Banking, sec. 391; Story, Prom. Notes, sec. 132. The effect of the blank indorsement of a negotiable instrument, including delivery, is to transfer the title to such instrument to the indorsee, and the presumption, in the absence of a showing to the contrary, is that it was for a valuable consideration. Tied. Com. Paper, sec. 256. The effect of the indorsement in question was to transfer to the

plaintiffs the title to the check, not merely to enable them to collect it, but for all purposes. That such was the intent of the parties is shown to some extent by the fact that credit was given to Osborn Brothers for the check. In the absence of evidence that the giving of credit was only for the purpose of keeping a record of the check, a matter of bookkeeping, we must presume that it was intended as a payment. The custom of banks, upon which the defendant relies, could not have controlled the agreement of the parties as shown by the indorsement, and evidence to prove it was, therefore, properly rejected. The claim that the plaintiffs are not the owners of the check is not supported by the evidence.

II.    A witness for the defendant testified that the indorsement on the check was, in his opinion, in the handwriting of one of the plaintiffs. On cross-examination the witness stated that he was not much acquainted with the handwriting of Osborn Brothers, and would not attempt to identify it, and that he would not say the indorsement was not in the handwriting of one of the Osborns. There was no attempt to show that the indorsement was made without due authority, and the evidence on that point would have been entitled to but little weight, had it been competent and material. It was immaterial, however, for the reason that the party whose signature the indorsement purported to be did not deny it in writing under oath. For that reason it was the duty of the court to treat it as genuine and admitted. Code, sec. 2730; *Robinson v. Lair*, 31 Iowa, 10.

2. ——: signature of indorser: genuineness: evidence.

III.    It is said the jury might have found from the evidence that the check was procured from the defendant by fraud on the part of Osborn Brothers, and that the burden was on the plaintiffs to show that they procured it for a valuable consideration, without notice of the fraud. But the record does not contain evidence which would

3. SALES: fraud: evidence.

have authorized the jury to find that the fraud alleged had been proven. The evidence fails to show with what disease the hogs died. It does not show that they were infected when sold. It is shown that, about the time the sale was made, there were some dead hogs in the yard where those sold were kept, and that some of them died soon after they were removed from it. But it is not certain whether the dead hogs in the yard specified died before or after the purchase was made, and, if it be conceded that the hogs in controversy were diseased when sold, it is not shown that Osborn Brothers knew that fact at the time of the sale.

We conclude that the evidence was not sufficient to authorize a verdict for the defendant, and that the action of the court in directing a verdict for the plaintiff was right. The judgment is AFFIRMED.

### OPINION UPON REHEARING.

### WEDNESDAY, OCTOBER 18, 1893.

BY THE COURT.—In a petition for rehearing, the appellant urges several objections to the opinion heretofore filed in this case, one of which demands notice.

It is said that the statement of the opinion that, as the signature which appeared to be indorsed on the check was not denied in writing, under oath, by the party whose signature it purported to be, it was the duty of the court to treat it as genuine and admitted, is erroneous. The answer does not deny specifically the genuineness of the signature, but avers that the check was delivered to the plaintiffs for the sole purpose of collecting it. There is a denial of some of the matters alleged in the petition, although it is at least doubtful if the genuineness of the indorsement is made an issue. We find, however, on further examination of the record, that the district court, in a ruling on the admission of testimony, treated the signature as

denied. It is the well settled rule that the genuineness of such a signature may be placed in issue by a denial not made by the person whose signature it purports to be, and that in such cases the burden of proof as to that issue is upon the party making the denial. Therefore, evidence to show that the signature in question was not genuine was material. The error of the opinion, in assuming that it was not, does not affect the result in this court, however, for the reason that the evidence submitted was not sufficient to authorize a finding that the signature was not genuine.

Other questions discussed in the petition for rehearing were so treated in the opinion that we do not deem it necessary to notice them further. The petition for rehearing is OVERRULED.