(139 App. Div. 610.)

### KRAFFT v. CITIZENS' BANK OF DYERSBURG, TENN.

(Supreme Court, Appellate Division, First Department.   July 7, 1910.)

1. PRINCIPAL AND AGENT (§ 62*)—DUTY OF AGENT.
    An agent owes to his principal diligence and good faith respecting property of the principal confided to his care.
    [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 99–104; Dec. Dig. § 62.*]

2. GUARANTY (§ 34*)—CONSTRUCTION AND OPERATION.
    The law will not attribute to a guaranty an intention to guarantee the party secured against the consequence of his own negligence or bad faith.
    [Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 36; Dec. Dig. § 34.*]

3. BANKS AND BANKING (§ 156*)—COLLECTIONS—DUTY OF BANK AS AGENT.
    A bank to whom a draft was sent for collection and for the remission of the proceeds owed as agent of the sender a greater duty to the latter than it owed to its own depositor, and, when such depositor attached the funds, the bank was bound to either defend its principal's title, or to unequivocally notify such principal to defend the action.
    [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 539–546; Dec. Dig. § 156.*]

4. BANKS AND BANKING (§ 165*)—DRAFTS—PROCEEDS—PARTIES ENTITLED.
    As between a bank discounting a draft and the drawer, the proceeds of the draft when collected belong to the bank.
    [Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 165.*]

5. BANKS AND BANKING (§ 175*)—COLLECTIONS—ACTIONS.
    Whether defendant bank, to whom a draft was sent by plaintiff's assignor for collection, acted negligently or in bad faith regarding gar-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

nishment proceedings wherein the proceeds of the draft were attached, towards plaintiff's assignor in regard to notice and defense of the proceedings, *held* for the jury.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 175.*]

Dowling, J., dissenting.

Action by Julius W. Krafft against the Citizens' Bank of Dyersburg, Tennessee. Motion by plaintiff for new trial on exceptions ordered to be heard in the first instance at the Appellate Division. Exceptions sustained, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, LAUGHLIN, and DOWLING, JJ.

H. Aaron, for appellant.
Percy S. Dudley, for respondent.

SCOTT, J.  This cause comes before us upon plaintiff's motion for a new trial; a verdict for defendant having been directed at Trial Term and the exceptions ordered to be heard here in the first instance. Plaintiff sues, as assignee of the National Bank of Commerce of St. Louis, for the amount of an overdraft claimed to be due from the defendant bank. The controversy between the parties arose from the following facts:

The two banks were business correspondents, and in the ordinary course of business each from time to time forwarded drafts and checks to the other for collection in the locality in which that other transacted business. On May 20, 1903, a concern known as the "Bartlett Commission Company" discounted with the Bank of Commerce a draft, with bill of lading attached, drawn by itself upon one H. A. Klyce of Dyersburg, and received credit upon its account with the Bank of Commerce for the amount thereof, less discount. The Bartlett Commission Company was a regular customer of the National Bank of Commerce, and, during all the time covered by the matters now in dispute, had a credit balance in said bank larger than the amount represented by the draft. The National Bank of Commerce forwarded the draft to defendant, its regular correspondent, for collection, and upon presentation to Klyce, the drawee, it was promptly paid, and defendant received the proceeds. Klyce immediately begun an action in Tennessee against the Bartlett Commission Company to recover the sum of $250 for the "difference in price on five cars corn not shipped." Whether this matter had anything to do with the consideration upon which the draft was drawn does not appear. Since the Bartlett Commission Company was a nonresident of Tennessee, the action was begun by an attachment or garnishment process, and a warrant was issued to defendant calling upon it to declare whether it was indebted to the Bartlett Commission Company. The Bank of Commerce was not made a party to the action or the garnishment process. On May 21st, after the attachment had been served upon it, defendant wrote the following letter to the Bank of Commerce:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"We write to advise you that H. A. Klyce paid your No. B 1466 for $440.57 and immediately attached funds. We hand you herein notice of attachment and you will note that answer is set for 30th this month. Please advise us of anything you may wish done in the matter."

There are two features of this letter which are worthy of notice, in view of the subsequent action of defendants. In the first place, the draft is spoken of as "yours"; that is, as the property of the Bank of Commerce. And, in the second place, the latter bank is not notified to defend its own interests, but is merely asked to advise defendant what course to pursue, which involved a clear implication that defendant intended to offer to represent the Bank of Commerce, and to act as it might direct. On the following day (May 22d) the Bank of Commerce answered, asserting that the draft and the proceeds thereof were its property, and that under the law an attachment could not issue against the funds of a national bank until after final judgment. The letter also requested a remittance, pointing out that under the law defendant would be perfectly safe in paying over the money. On the following day (May 23d) defendant wrote that it was perfectly willing to pay over the proceeds of the draft; but, since there was a question of law involved, it desired to be protected by a letter guaranteeing that it should be held harmless. Such a letter was sent on May 25th, and the proceeds of the draft retransmitted to the Bank of Commerce. After this correspondence, and on May 30th, defendant made its return to the writ of attachment. The specific question propounded to it was:

"State whether or not you are, or was at the time of the garnishment, indebted to the defendant (meaning Bartlett Commission Company). If so, how, and to what extent?"

To this defendant made answer:

"We hold proceeds of draft for $440.57 drawn by defendant on H. A. Klyce, and same was sent to us by the National Bank of Commerce in St. Louis, Mo."

This answer, whether by intention or ignorance, was so drawn as to convey a false impression, without actually misstating any fact. It was not a categorical answer to the question propounded, and did not state the all-important fact, then well known to defendant, that the Bank of Commerce claimed to be the owner of the proceeds of the draft. On the contrary, it was well calculated to produce the impression that the money received in payment of the draft was the property of the Bartlett Commission Company, and that the Bank of Commerce had no interest therein, but had acted merely as a forwarder. It is not without significance that defendant did not, as far as appears, send a copy of this answer to the Bank of Commerce. On June 17th, before the cause came on for trial, defendant wrote to the Bank of Commerce:

"On May 22d, you wrote us concerning the Klyce garnishment that the Supreme Court of the U. S. had ruled on such a question and that you had recently had a similar case in Tennessee. Will you please cite us the federal court ruling, also some reference to the Tenn. case. This will facilitate matters with us as the case will come up for hearing here soon."

The clear import of this letter was that defendant was preparing to defend against the attachment process, and sought authorities upon the legal question involved. The National Bank of Commerce at once replied that it had turned the matter over to its attorneys, who would write defendant on the subject. On the same day (June 18th) the attorneys did write at length, citing a number of decisions, and concluding with this statement:

"This is unquestionably the law and if judgment should be rendered against you as garnishee in your lower courts, prosecute an appeal, as an appellate forum can be reached that will sustain this position. Please advise me of the outcome."

To their letter no reply was sent, and, as it afterwards developed, the defendant did nothing in the matter, except to hand a list of the authorities to the justice before whom the garnishment proceeding was pending. In view of the equivocal and misleading return made by defendant to the garnishee process, the justice may well have wondered what relevancy the authorities were supposed to have to the case before him, and it is not surprising that on July 20th he rendered what is termed a "conditional judgment" against the garnishee. Hearing nothing from defendant, the counsel for the Bank of Commerce on August 17th wrote to defendant asking to be advised of the disposition of the case, and on August 20th received the following reply:

"Dear Sir: The letter you wrote us for National Bank of Commerce was handed by us to attorney for party attaching here and same was returned to us and attorney stated that was still investigating and we heard nothing further from case till your letter was received. We have asked for standing of the case from Mr. Klyce the party attaching and he said that case was set for trial the 20th of last month and publication made, but knows nothing further about case as his attorney had not informed him of any disposition. We judged that National Bank of Commerce would pay no attention to case from their letter to us when we notified them of attachment."

From the tone of this letter, and in view of the former correspondence, and in ignorance of the form of return made by defendant to the garnishment process, the counsel for the Bank of Commerce assumed that his view of the law had been acquiesced in and that the case had been dropped. This letter, although it may have been true in the letter, did not state the whole truth, and was certainly misleading. The fact was that just one month before it was written, on July 20th, the justice had rendered a conditional judgment in favor of the plaintiff in the garnishment action, a fact which defendant could easily have ascertained, and very possibly knew. This judgment did not become absolute until January 20, 1904, and at any time before that date the Bank of Commerce, if advised that a conditional judgment had been entered, could have entered an appearance and had the cause heard on its merits. No word, however, was received from defendant until after the judgment had become absolute, when, on May 5, 1904, defendant wrote to the Bank of Commerce that judgment had been entered, and that Klyce, the plaintiff therein, demanded payment of the attached funds. Then followed a correspondence between the banks in which the Bank of Commerce, in effect, insisted that defendant had misled it, and the defendant protested that it had never understood

that the Bank of Commerce expected it to defend the garnishment proceeding. Preferring, apparently, to be a defendant rather than a plaintiff, the defendant managed to overdraw its account with the Bank of Commerce, and, when sued for the overdraft, sets up the judgment in the garnishment proceeding and the guaranty of indemnity as a defense.

The plaintiff does not charge defendant with bad faith, and for the purposes of this appeal it is not necessary to pass upon the bona fides of the defendant's act. It may be remarked, however, that if defendant had formed the deliberate purpose of favoring Klyce, who was one of its depositors, and of preventing any successful defense by the Bank of Commerce, it could not have adopted more effective means than those which it employed. The vital question in the garnishment case was whether the funds in defendant's hands were the property of the Bank of Commerce, or of the Bartlett Commission Company. If they were the property of the Bank of Commerce, they were not subject to attachment. The defendant was the agent of the Bank of Commerce to collect the draft and to remit the proceeds. That duty was superior to any duty that it bore to Klyce, its depositor. It knew only the Bank of Commerce as the owner of those proceeds, and, when an attack was attempted to be made on those funds by way of attachment, it was bound either to itself defend its principal's title, or to have unequivocally notified that principal to come in and defend itself. It did neither. It wrote to its principal letters couched in such language as justified the belief that it was taking steps to protect the principal's rights, and sought only assistance by way of citation of authorities. With full notice that its principal claimed absolute ownership in the funds, it made a return to the writ of attachment which was, to say the least, misleading and equivocal, and then utterly neglected to defend the proceeding, or even to notify its principal that a conditional judgment had been rendered against it.

It is a fundamental rule that an agent owes to his principal diligence and good faith in respect to the property of the principal confided to its care, and there certainly is enough in this record to convict defendant of negligence, if not of bad faith, in respect to the funds of the Bank of Commerce which it held as agent for the latter. Assuming, as we do, that the facts warrant a finding that defendant was guilty of negligence or bad faith, it cannot avail itself of the letter of indemnity written by the Bank of Commerce, for the law will not attribute to such a guaranty an intention to guarantee the defendant against the consequence of its own negligence or bad faith. Mynard v. Syracuse, etc., R. R. Co., 71 N. Y. 183, 27 Am. Rep. 28; Mitchell v. Southern Ry. Co., 124 Ky. 146, 74 S. W. 216.

The defendant urges that the judgment in the garnishee proceeding in Tennessee is a bar to this action, and in support of this plea relies upon Harris v. Balk, 198 U. S. 215, 25 Sup. Ct. 625, 49 L. Ed. 1023. It is not easy to see how the defendant can expect to take anything from that authority. In the garnishment proceeding considered in that case, Balk, the creditor whose debt was attached, was a party to the proceeding. In this case the Bank of Commerce was not a party,

and the attachment did not run against any money that belonged to it. In that case Balk was duly and timely notified of the issue of the attachment and afforded an opportunity to defend it. In this case, while the Bank of Commerce was notified of the attachment, the notification was couched in such terms as justified it in believing that defendant, its agent, would protect its interests. In that case there was no question whether that Harris owed Balk the debt that was attached. In this case there was a serious doubt whether the money attached belonged to the Bartlett Commission Company, the defendant in the garnishment proceeding, and the present defendant had express and explicit knowledge that the Bank of Commerce claimed ownership thereof. Harris v. Balk, therefore, is wholly inapplicable to the present case, except that the following succinct statement of the law condemns the defendant's position:

"Generally, though, the failure on the part of the garnishee to give proper notice to his creditor of the levying of the attachment would be such a neglect of duty on the part of the garnishee which he owed to his creditor as would prevent his availing himself of the judgment in the attachment suit as a bar to the suit of the creditor against himself, which might therefore result in his being called upon to pay the debt twice."

Finally the defendant contends that the Bank of Commerce has lost nothing because the money attached was not in fact its property, but that of the Bartlett Commission Company. To sustain this defense, reliance is placed upon Citizens' State Bank v. Cowles, 180 N. Y. 346, 73 N. E. 33, 105 Am. St. Rep. 765, wherein it is said that:

"The mere crediting to a depositor's account on the books of a bank, of the amount of a check drawn upon another bank, when the depositor's account continues to be sufficient to pay the check in case it is dishonored, does not constitute the bank a holder in due course."

Again, the authority relied on can give no comfort to the defendant because it is inapplicable to the facts of the case. If Klyce had refused to pay the draft, and upon being sued by the Bank of Commerce had set up some offset or defense against the Bartlett Commission Company, the case cited might have been applicable. But Klyce had paid the draft, and the only question was whether the proceeds belonged to the Bartlett Commission Company, or to the Bank of Commerce. Unquestionably, as between these two the proceeds of the draft was the property of the Bank of Commerce. Metropolitan Nat. Bank v. Lloyd, 90 N. Y. 530; Ætna Nat. Bank v. Fourth Nat. Bank, 46 N. Y. 82, 7 Am. Rep. 314.

If, as we consider, a jury would be justified in finding that the defendant was guilty of negligence or bad faith towards its principal, the plaintiff's assignor, it was error to direct a verdict for the defendant.

The appellant's exceptions are therefore sustained, the verdict set aside, and a new trial granted, with costs to appellant to abide the event.

INGRAHAM, P .J., and McLAUGHLIN and LAUGHLIN, JJ., concur. DOWLING, J., dissents.