THE SOUTHWEST NATIONAL BANK, Appellant,
v. R. J. HOUSE et al., Respondents.

Kansas City Court of Appeals, May 19, 1913.

CHECKS: Fraudulent Inception: Good Faith: Usual Course of
Business. The payee in a check for $5240, which he had
fraudulently obtained from the drawer, transferred it by
indorsement to a bank, with which he had recently opened an
account and other than the one on which it was drawn, and
had the amount entered on his pass book by the ·receiving
teller. He then immediately went to the paying teller's
window and presented his check for cash, which the paying
teller paid after conferring with the receiver. It was shown
that the usual course with the bank thus receiving a large
check on another bank in the same city, was to send it to
the latter for certification, and that it was done in this case
within fifteen minutes of receiving it, and the latter bank
refused to honor the check. But before the former bank
had learned of the check's dishonor, it paid the payee's check
as above stated, thus not waiting to hear the result of its
own inquiry. It was *held* that these facts made an issue of
fact for the trial court whether the bank purchased the check
in good faith in the usual course.

Appeal from Jackson Circuit Court.—*Hon. W. O.
Thomas,* Judge.

AFFIRMED.

*Ellis, Cook & Barnett* for appellant.

(1) Respondents made no proof of any equities
against the payee, since the only evidence offered was
hearsay or legal conclusion, or variance from the an-
swer admitted over appellant's objection. Barnes v.
McMullens, 78 Mo. 269, 274; Gullett v. Hoy & Orton,
15 Mo. 400; Cutler v. Cook, 77 Mo. 391; Crawford v.
Johnson, 87 Mo. App. 485; Kelly v. Staed, 136 Mo.
435; R., p. 71 and p. 5; Ogden on Negotiable Instru-
ments, p. 121; Bank v. Refrigerating Co., 326 Mo. 407;
Powers v. Woolfolk, 132 Mo. App. 362. (2) Judg-
ment should have been for appellant because, assum-

ing that respondents did show a good defense to the check, yet appellant met its burden of proof by show-ing that it was an innocent purchaser for value in due course since it received the check in the usual form of a bank deposit, and in due course paid out money in reliance thereon. Appellant bank was not robbed of its character of a purchaser for value by the mere fact that at the time of paying the money thereon the check had not yet appeared upon the bank's ledger as a credit to the depositor. Bank v. Refrigerating Co., 236 Mo. 407; Ayres v. Bank, 79 Mo. 424, 425; Arnold v. Bank, 100 Mo. App. 476, 478; Investment Co. v. Bank, 96 Mo. App. 144; Butcher v. Butler, 134 Mo. App. 61; Bank v. Roll, 60 Mo. App. 588. (3) Nor by the fact that after the check's dishonor appellant withheld credit for the same to the depositor from the ledger. Bank v. Refrigerating Co., 236 Mo. 416; Dymock v. Bank, 67 Mo. App. 102; Bank v. Roll, 60 Mo. App. 589; Ayers v. Bank, 79 Mo. 425. (4) Nor by the fact that only a portion of the agreed price therefor had been paid out by the appellant. Sec. 10024, R. S. 1909. Dresser v. Missouri & Iowa Ry. Const. Co., 93 U. S. R. 92; Record, p. 13. (5) Appellant's action was brought in proper form, even to effect merely a *pro tanto* recovery, since partial payment by the indorsee of the purchase price is matter of defense, to be urged by the maker only in case he can show a good defense against the paper in the hands of the payee. Banister v. Kenton, 46 Mo. App. 462; Dresser v. Missouri & Iowa Ry. Const. Co., 93 U. S. 92; Ogden on Negotiable Instruments, p. 312; 7 Cyc., 943; Bunker on Negotiable Instruments, p. 104; Eaton & Gilbert on Commercial Paper, p. 374.

*Haff, Meservey, German & Michaels* and *Charles M. Blackmar* for respondents.

(1) The trial court found that plaintiff was not an innocent purchaser for value, and not entitled to

recover on its petition, and the judgment being in the nature of a finding of fact and against the plaintiff, the judgment should be affirmed. Johnson v. Grayson, 230 Mo. 394; Loan Co. v. Killin, 153 Mo. App. 111; Bank v. Hammond, 124 Mo. App. 180; Pittsburg Bridge Co. v. Transit Co., 135 Mo. App. 583; Kelley v. Railroad, 151 Mo. App. 311; Forder v. Handland, 155 Mo. App. 459; Bank v. Lowder, 141 Mo. App. 607; Lorimer v. Bryon, 153 S. W. (K. C.) 1069; Bethune v. Railroad, 139 Mo. 580; Gibson v. Bailey Co., 114 Mo. App. 337. (2) The plaintiff and appellant in this case is entitled to no review of the weight of the evidence because all of the evidence taken at the trial of the case is not printed in its abstract of the record. Brand v. Cannon, 118 Mo. 598; Ogleby v. College of Dental Surgery, 71 Mo. App. 339; Plumbing Co. v. Brewing Co., 126 Mo. App. 270; Bradley v. Bradley, 119 Mo. 62; Reed v. Peck, 163 Mo. 336; Eppstein v. Clothing Co., 67 Mo. App. 221. (3) Defendants' answer sufficiently raised the issue of partnership, and the court did not err in refusing to open the case. Coal & Coke Co. v. Aronson, 102 Mo. App. 590.

ELLISON, J.—This action is based on a bank check charged to have been drawn by defendant's and purchased by plaintiff, a bank in Kansas City. A trial was had by the court without the aid of a jury and judgment rendered for defendants.

The check, dated January 13, 1910, for the sum of $5240, was drawn by R. J. House & Co. on the Western Exchange Bank, also in Kansas City, payable to the order of the Dixie Grain Co., and was indorsed in blank to plaintiff. The Dixie Grain Company was the trade name of R. S. Carr, and we shall use his name. It appeared in evidence that Carr had opened an account with plaintiff bank only nine days previous to the date of this check; that on the morning of January

13th, he had a balance in his favor in plaintiff bank of $2009.50. That morning the bank received a sight draft drawn on the Dixie Grain Company for $1040. Carr paid it that morning by giving the bank a check for that amount on his account, leaving a balance of acount in his favor of $969.50. Afterwards, on the same morning, Carr deposited the check in controversy, for $5240, in the deposit window of plaintiff bank, the teller entering it on his pass book. Carr then went immediately over to the paying telller's window and presented his check for $1610, payable to himself, and the teller paid him the cash, and he absconded. Plaintiff bank then sent the check for $5240 to the Western Exchange Bank to be certified by the latter, but certification was refused. So, without counting this last check, when the bank paid Carr the $1610, it paid him $640 more than he had; and the latter amount is really all it seeks to recover.

The evidence tended clearly to show that the check was fraudulently obtained from defendants by Carr, and that they ought not to pay it unless plaintiff is an innocent purchaser for value in the usual course of business. As the court found for defendants, we have only to inquire whether there was any su*bstantial* evidence, or whether there is any substantial and reasonable inference to be drawn from the evidence, tending to justify the court in holding that plaintiff had not shown that it purchased the check in good faith in the usual course of such business.

It has already been shown that the plaintiff bank did not part with the money when it took in the check in suit. Its claim is that by taking the check and giving Carr credit therefor it became a purchaser and that Carr's being able immediately to draw out $1610 was partly on the faith of that check. It was shown by plaintiff's officers, witnesses in its behalf, that when checks of any large amount drawn on another bank in the city, like the one in controversy, is presented, it

is always sent to that bank to see that it is good and to have it certified; and that was done in this case within fifteen minutes of its receipt by plaintiff. But the misfortune was that plaintiff allowed Carr to draw on it before it learned the result of the inquiry. It is true that these witnesses said it did not follow that because such checks were sent to the banks upon which they were drawn, ot be certified, that they, as officers, should not pay out money on the deposit before getting a response to the request for certification. But the court was not obliged to believe that, for it is difficult to understand the object of inquiry if the check was to be looked upon as cash before the inquiry is made. Besides, the witnesses stated that the object of sending it for certification was "to see if it was good." That this was done "to protect the bank." Furthermore, it was shown that this check, with the deposit slip, was not turned over to the bookkeeper, but was delivered to the "collection teller" to be sent for certification and it never was entered by the bookkeeper as a credit, though, as already stated, plaintiff allowed Carr immediately to draw cash on it. Plaintiff cites us to Bank v. Refrigerating Co., 236 Mo. 407. Defendants do not dispute the soundness of the law therein declared, but insist it has no application to the facts of this case, and in that we agree with them.

In our opinion these facts, and inferences therefrom, will sustain the court in finding that plaintiff's alleged purchase of the check (if completed at all) was not in the usual course in such business; that is to say, that plaintiff had not taken the check in good faith, as its own, at the time it paid Carr the $1610. At that time it had not yet learned from its inquiry, made "to protect the bank," whether the check was "good," and it had not passed it over for entry of credit on its books, and never did do so. Carr's title to the check was defective (Secs. 10025, 10027, R. S.

1909) and the burden was on plaintiff to show that at the time it met with the loss, it had acquired the check in due course, and we think there is evidence tending to support the court's finding that it did not do so.

There is this further consideration which denies plaintiff a right of recovery: It claims that it paid for the check by receiving it as a cash deposit. That is to say, in payment for the check it gave Carr credit for that much money *and became liable* to him for that amount. It is, of course, the law, that the property in a check vests in the banker only when he has become responsible for the amount to the depositor. [St. Louis, etc., Ry. Co. v. Johnston, 133 U. S. 566, 575.]

Now what was shown concerning the relationship between plaintiff and Carr at the time of this transaction? There is no evidence whatever of any agreement between them that Carr should have the right to deposit checks on other banks and draw against them before collection. Neither was there any evidence that a course of dealing had grown up between them. In fact, as was stated above, Carr had only opened an account with plaintiff a few days before. These considerations, connected with the fact that the check was withheld from entry of credit on the books of the bank and was turned over to the collection teller to be sent to the bank upon which it was drawn "to protect the bank" by ascertaining "if it was good," is evidence of the most persuasive character that plaintiff did not consider it had become absolutely responsible to Carr for the amount of the check, and had not concluded a purchase of the note. Is it not clear that plaintiff on receiving word that the check was not good, did not at that time consider that it had bought it of Carr?

It is true that entry of a deposit in a depositor's pass book is evidence of a deposit of the amount, subject to be checked upon, but it is only prima facie evidence and is open to explanation as is a receipt.

[Quattrochi Bros. v. Bank, 89 Mo. App. 500.] Such entry by no means concluded the trial court in passing on the facts; it was only to be considered in connection with the other facts and circumstances in the case.

It is well to state that no declarations of law were asked by either party and we have simply to answer whether there is any substantial evidence, with reasonable inferences to be drawn therefrom, supporting the finding; and having concluded there is, we have only to affirm the judgment. All concur.