ACME HAY & MILL FEED COMPANY, Appellant, v. METROPOLITAN
NATIONAL BANK, Intervener, Appellee.

**BANKS AND BANKING:** Deposits—Ownership of Deposited Draft. A
1 bank which receives a draft payable to itself, credits the account
of the drawer with the full amount thereof, and permits the said
drawer to immediately draw checks against said credit, will (in
the absence of any other state of facts) be deemed the *absolute owner*
of the draft; and this is true though the bank reserves the right to
charge back the amount of the credit in case the draft be not paid.

**BILLS AND NOTES:** Holdership in Due Course—When Issue Imma-
2 terial. Whether the payee of a draft was a holder in due course
is a question which becomes wholly immaterial *after the .draft is
actually paid.*

*Appeal from Woodbury District Court.*—A. O. WAKEFIELD,
Judge.

DECEMBER 11, 1924.

ACTION at law, aided by attachment. The intervener
claimed to be the owner of the money in the hands of the gar-
nishee. From a judgment in favor of intervener, plaintiff ap-
peals.—*Affirmed.*

*Naglestad, Pizey & Johnson,* for appellant.

*Kindig, McGill, Stewart & Hatfield,* for appellee.

VERMILION, J.—It appears without dispute that the de-
fendant the Rutherford-Brede Company, of Minneapolis, Min-
nesota, drew a sight draft on the plaintiff and appellant, the
Acme Hay & Mill Feed Company, for $547.20,
payable to the intervener, Metropolitan National
Bank of Minneapolis, to which was attached a
bill of lading for a shipment to the plaintiff.
The defendant was given credit in its account with the inter-
vener bank for the amount of the draft, and the draft and bill
of lading were forwarded by the intervener to the Toy National

1. BANKS AND
BANKING: de-
posits: owner-
ship of deposited
draft.

Bank of Sioux City, for collection. The appellant paid the draft to the Sioux City bank, and commenced this action upon a claim having no connection with the transaction out of which the draft arose, and caused the Toy National Bank to be garnished as the supposed debtor of the defendant. The intervener claimed to have been the owner of the draft, and to be entitled to the proceeds thereof in the hands of the garnishee. The appellant insists that, inasmuch as the defendant did not withdraw the amount of its deposit with the intervener before the garnishment, the intervener did not become a holder of the draft in due course. This may be conceded; but the conclusion that the intervener was not a holder in due course is not determinative of its right to the proceeds of the draft. Appellant is not defending against the draft: that has been paid. It is seeking to hold the proceeds of the draft in the hands of the garnishee, as the property of the defendant. Of course, by its garnishment it acquired no greater right to the proceeds of the draft than the defendant had. The question at issue is one of title. The rights of the intervener depend, not upon whether it was a holder of the draft in due course, as that term is defined in the Negotiable Instruments Act, but upon whether it was the owner of the draft. It cannot be doubted that the intervener might have been the owner of the draft and entitled to the amount realized on its payment, and still not have been a holder in due course. *Trevisol v. Fresno Fruit Growers' Co.*, 195 Iowa 1377. One might be the unquestioned owner of a negotiable instrument, and yet, by reason of having taken it after it was due, or with notice of its previous dishonor, or under other circumstances defined by statute as depriving him of the rights of a holder in due course, not be such a holder. Section 3060-a52, Code Supplement, 1913 (Section 9512, Code of 1924). If the intervener was the owner of the draft, the fact that it was not a holder in due course would not affect its right to the proceeds upon payment, as against the creditor of the drawer. 2 Michie on Banks and Banking, Section 127; *Morrison v. Farmers & Mer. Bank*, 9 Okla. 697, 701 (60 Pac. 273); *Krafft v. Citizens' Bank*, 139 App. Div. 610 (124 N. Y. Supp. 214); *Brown v. Yukon Nat. Bank*, 138 Ark. 210 (209 S. W. 734).

2. BILLS AND NOTES: holdership in due course: when issue immaterial.

The vital question in the case is whether the bank became the owner of the draft or merely a bailee,—whether it took it as owner or for collection. *Perth Amboy Gas Light Co. v. Middlesex County Bank*, 60 N. J. Eq. 84 (45 Atl. 704). Upon this question there is some conflict of authority. An apparent divergence of opinion in many of the cases may be reconciled upon a consideration of the varying facts presented. With a few exceptions, the rule is generally recognized that the determination of the question is controlled, in the absence of an express agreement, by the intention of the parties, as shown by the attending circumstances. The difference of opinion to be found, both among text-writers and in the adjudicated cases, as to the presumption that shall obtain where nothing more appears than the mere indorsement to and deposit with a bank by a customer, of a check or draft upon a third party, where the customer is given credit for the amount upon his account and has an immediate right to draw upon it, appears, however, to be irreconcilable. It is said by Zane, in his work on Banks and Banking, pages 210 and 211, that such a transaction is, in principle, a bailment; that the right to check against the deposit is a mere privilege; that the collecting bank takes no risk, because it has the right to revoke the credit if the collection is not made, and to charge the paper back to the depositor; that it does not help the matter to appeal to custom, or to say it is a question of fact. There are cases holding that, when checks or drafts are deposited in a bank, the presumption is that they are deposited for collection merely. A leading case announcing this doctrine, and one said by Zane to state the true rule, is *Beal v. City of Somerville*, 50 Fed. 647 (17 L. R. A. 291). Among others so holding are *Perth Amboy Gas Light Co. v. Middlesex County Bank*, supra; *Gulf States Lbr. Co. v. Citizens First Nat. Bank*, 30 Ga. App. 709 (119 S. E. 426); *Balbach v. Frelinghuysen*, 15 Fed. 675; *National Gold Bank & Tr. Co. v. McDonald*, 51 Cal. 64 (21 Am. Rep. 697); *Latham v. Spragins*, 162 N. C. 404 (78 S. E. 282); *First Nat. Bank v. McMillan Bros.*, 15 Ga. App. 319 (83 S. E. 149); *Hazlett v. Commercial Nat. Bank*, 132 Pa. 118 (19 Atl. 55); *Bank of Big Cabin v. English*, 27 Okla. 334 (111 Pac. 386).

The rule supported by the very decided weight of author-

ity is, however, that, where a check or draft is deposited by a customer and credit given therefor by the bank on his account as cash, against which he has an immediate right to draw, in the absence of any understanding as to how it shall be treated, or proof of circumstances from which such an understanding may be inferred, *prima facie* the title to the paper passes to the bank. 2 Michie on Banks and Banking, Section 127, states the rule thus:

"A deposit in a bank of a bill, check, draft or other evidence of debt in the ordinary course of business, whereby the depositor receives a credit against which he may draw, operates to transfer the title to the bank, in the absence of a usage, custom, or of any oral or other agreement that the effect of the transaction shall be otherwise. * * * In such case the bank is a purchaser and absolute owner of the paper, and not a mere agent to collect the same for the payee, but is not necessarily a bona-fide purchaser for value and without notice. * * * This is the rule although the bank has the right to charge dishonored paper to the depositor, instead of proceeding against the maker."

In 2 Morse on Banks and Banking (5th Ed.), Section 575, it is said:

"A deposit being made by a depositor in a bank, in the ordinary course of business, of money, or drafts or checks received as money, the title to the money or drafts or checks is immediately vested in and becomes the property of the bank."

The following cases support the rule that *prima facie* the bank, by such a transaction, becomes the owner of the paper. *Taft v. Quinsigamond Nat. Bank,* 172 Mass. 363 (52 N. E. 387); *Hoffman v. First Nat. Bank,* 46 N. J. L. 604; *Walker & Brock v. Ranlett Co.,* 89 Vt. 71 (93 Atl. 1054); *National Bank of Webb City v. Everett,* 136 Ga. 372 (71 S. E. 660); *Fourth Nat. Bank v. Mayer,* 89 Ga. 108 (14 S. E. 891); *National Com. Bank v. Miller,* 77 Ala. 168; *Fourth Nat. Bank v. Bragg,* 127 Va. 47 (102 S. E. 649); *Ditch & Bros. v. Western Nat. Bank,* 79 Md. 192 (29 Atl. 72, 47 Am. St. 375, 23 L. R. A. 164); *Auto & Accessories Mfg. Co. v. Merchants' Nat. Bank,* 116 Md. 179 (81 Atl. 294); *Metropolitan Nat. Bank v. Loyd,* 90 N. Y. 530; *Cragie v. Hadley,* 99 N. Y. 131 (1 N. E. 537); *American Tr. & Sav. Bank v. Gueder Mfg. Co.,* 150 Ill. 336 (37 N. E. 227);

*Williams v. Cox,* 97 Tenn. 555 (37 S. W. 282) ; *Friberg v. Cox,* 97 Tenn. 550 (37 S. W. 283) ; *Provident Nat. Bank v. Cairo Flour Co.,* (Tex. Civ. App.) 226 S. W. 499 ; *Howe Grain Co. v. Crouch Grain Co.,* (Tex. Civ. App.) 211 S. W. 946 ; *Plumas County Bank v. Bank of Rideout,* 165 Cal. 126, 133 (131 Pac. 360, 47 L. R. A. [N. S.] 552) ; *People v. Ballas,* 55 Cal. App. 748 (204 Pac. 401) ; *Ayres v. Farmers & Merch. Bank,* 79 Mo. 421 (49 Am. Rep. 235) ; *Southwest Nat. Bank v. House,* 172 Mo. App. 197 (157 S. W. 809) ; *Armstrong v. National Bank,* 90 Ky. 431 ; *Morrison v. Farmers & Merch. Bank,* 9 Okla. 697, 701 (60 Pac. 273) ; *Hobart Nat. Bank v. McMurrough,* 24 Okla. 210 (103 Pac. 601) ; *Scott v. McIntyre Co.,* 93 Kan. 508 (144 Pac. 1002, L. R. A. 1915 D 139) ; *Noble v. Doughten,* 72 Kan. 336 (83 Pac. 1048) ; *Security Bank v. Northwestern Fuel Co.,* 58 Minn. 141 (59 N. W. 987) ; *In re State Bank,* 56 Minn. 119 (57 N. W. 336, 45 Am. St. 454) ; *South Park F. & M. Co. v. Chicago G. W. R. Co.,* 75 Minn. 186 (77 N. W. 796) ; *Higgins v. Hayden,* 53 Neb. 61 (73 N. W. 280) ; *Aebi v. Bank of Evansville,* 124 Wis. 73 (102 N. W. 329, 109 Am. St. 925, 68 L. R. A. 964) ; *Brown v. Yukon Nat. Bank,* 138 Ark. 210 (209 S. W. 734) ; *National Bank of Commerce v. Bossemeyer,* 101 Neb. 96 (162 N. W. 503) ; *Cox Wholesale Groc. Co. v. National Bank,* 107 Ark. 601 (156 S. W. 187) ; *Security Nat. Bank v. Old Nat. Bank,* 241 Fed. 1 ; *In re Jarmulosky,* 249 Fed. 319 (L. R. A. 1918 E 634) ; *St. Louis & S. F. R. Co. v. Johnston,* 27 Fed. 243. The case last cited was reversed by the United States Supreme Court upon another proposition, the court saying that this question was one of fact, rather than of law. The presumption that the bank was the owner of paper so deposited was recognized in *Burton v. United States,* 196 U. S. 283 (49 L. Ed. 482).

Importance in varying degrees is given, in the majority of the cases, to the fact that the depositor has an immediate right to check against the credit so given him, as indicating that the bank took title to the paper; while in those holding that the bank is presumed to be a mere collector, this is said to be but a provisional credit, a privilege given him, and not controlling. And the right of the bank to charge back to the depositor the amount for which credit was given, in case the paper is not paid, is, in the latter cases, considered of controlling importance,

as showing that title to the paper did not pass to the bank; although this is quite generally recognized as no more than the exercise of a right which the bank would, in any event, have, to hold the drawer or indorser of dishonored paper. See, also, *Brusegaard v. Ueland*, 72 Minn. 283 (75 N. W. 228).

The fact that a draft is drawn in favor of the bank in which it is deposited, has been held to authorize a presumption that the bank took it as owner, and not merely for collection. *First Nat. Bank v. McMillan Bros.*, supra; *Gulf States Lbr. Co. v. Citizens' First Nat. Bank*, supra; *National Bank of Webb City v. Everett*, supra; *Walker & Brock v. Ranlett*, supra.

This court has heretofore adhered to the rule which we believe to be supported both by reason and the weight of authority. In *Shaw & Schoonover v. Jacobs*, 89 Iowa 713, an action by an indorsee of a check, who was alleged to have taken it only for collection, it was said:

"The effect of the indorsement in question was to transfer to the plaintiffs the title to the check, not merely to enable them to collect it, but for all purposes. That such was the intent of the parties is shown to some extent by the fact that credit was given to Osborn Brothers [the payees and indorsers] for the check. In the absence of evidence that the giving of credit was only for the purpose of keeping a record of the check, a matter of bookkeeping, we must presume that it was intended as a payment. The custom of banks, upon which the defendant relies [to cancel the credit if the check was not paid], could not have controlled the agreement of the parties * * *. The claim that the plaintiffs are not the owners of the check is not supported by the evidence."

Perhaps it should be noted that, in that case, the question that the giving of an unused credit would not constitute the indorsee an innocent purchaser of the check for value does not seem to have been raised.

*First Nat. Bank v. Mt. Pleasant Mill. Co.*, 103 Iowa 518, is a case where, upon a sale of grain, the seller drew a draft in favor of the plaintiff bank, accompanied by a bill of lading for the shipment, indorsed in blank, and the bank gave the seller credit for the amount of the draft. The shipment was attached *en route* by a creditor of the seller's. The question was whether

the indorsee of the bill of lading had a better title to the grain than the attaching creditor of the indorser had, and we said:

"So when the plaintiff in this case cashed the draft, and took the assignment of the bill of lading from the commission company [the seller], it secured a better title than the milling company, which attached the grain while in transit; and the fact that, when the grain was attached, it had not been called upon to make any direct advances to the commission company, is not, of itself, of controlling importance."

In *Midwest Nat. Bank & Tr. Co. v. Niles & Watters Sav. Bank,* 190 Iowa 752, it was recognized that the case of *Beal v. City of Somerville,* supra, was classed among the minority decisions; and *Security Bank v. Northwestern Fuel Co.,* supra, was quoted with approval, as follows:

"Upon a deposit, being made by a customer in a bank, in the ordinary course of business, of money, checks, drafts, or other negotiable paper received and credited as money, the title of the money, drafts, or other paper immediately becomes the property of the bank, which becomes debtor to the depositor for the amount, unless a different understanding affirmatively appears."

In the instant case, the evidence as to the deposit of the draft by defendant in the intervener bank is to be found only in the testimony of the cashier and the books and records of the bank. There is no evidence of any custom, as between these parties or generally, relating to such transactions; nor is there any evidence as to the prior course of dealing between them. The testimony of the cashier and the records of the bank show the deposit by defendant, on March 15, 1922, of the draft in question, with another, the two aggregating $1,062; and that defendant was given credit on an open account at the bank for that amount on that day. This account shows other deposits from day to day, and withdrawals, indicated in the balances shown, thereafter up to March 27th, at which date it shows an overdraft. Balances were struck, at times, oftener than once a day, and on three occasions prior to March 21st, the date of service of notice of garnishment on the garnishee, the balance shown was less than the amount of the draft in question. While there is no evidence tending to show a right in the intervener

bank to charge back to the account of defendant the amount of the draft if it were not paid, it. is conceded by counsel for intervener that it would have that right.

We have, then, this state of facts: The draft was drawn in favor of the intervener bank, and was deposited to the defendant's account therein, and defendant was given credit for it; the defendant exercised the right to check upon the account before the collection of the draft by intervener, and had, by so doing, reduced the account to an amount less than that of the draft, before the garnishment. There is nothing whatever in the record from which there can be inferred any intention of the parties' that the draft was deposited only for collection, or that the intervener was not the owner of the draft. The admission of counsel that the bank had a right to charge defendant's account with the amount of the draft if it was not paid is not alone sufficient, under the circumstances, and according to what we believe is the proper rule, under the authorities cited, to justify a contrary holding. It was, as has been said, a right it would undoubtedly have had, as the payee of a dishonored draft, to recover against the drawer, and one that it could have enforced by charging the defendant's account with the amount.

Error is assigned on the admission in evidence of the individual ledger sheet of the intervener, showing the defendant's account. We think that sufficient foundation was laid for its admission. *Ricker v. Davis,* 160 Iowa 37; *Duffy v. Hardy Auto Co.,* 180 Iowa 745; *Shea v. Biddle Impr. Co.,* 188 Iowa 952. But, in any event, the ruling was not prejudicial, as there was no evidence even tending to show that the transaction was not as testified to by the cashier, or to overcome the presumption, arising from the facts so shown, that the bank was the purchaser and owner of the draft.

The judgment is—*Affirmed.*

ARTHUR, C. J., and EVANS and STEVENS, JJ., concur.