SOUTH PARK FOUNDRY & MACHINE COMPANY and Others v.
CHICAGO GREAT WESTERN RAILWAY COMPANY.

January 5, 1899.

Nos. 11,436—(198).

Insolvent Bank—Deposit of Draft for Collection—Credit before Collection—In re State Bank Followed.

> *Held*, following doctrine of In re State Bank, 56 Minn. 119, that the evidence justified the trial court in finding that a draft delivered by the drawer to his bank, and for which he received credit on his account, was delivered for "collection and credit," and that the credit before collection was merely provisional, and, hence, that the title to the draft did not pass absolutely to the bank.

Petition by the South Park Foundry & Machine Company to the district court for Ramsey county in the matter of the receivership for the insolvent Bank of Minnesota. The receivers of the bank and the Chicago Great Western Railway Company were ordered to show cause why the petition should not be granted. The facts are given in the opinion. From an order, O. B. Lewis, J., granting petitioner's application, the railway company appealed. Affirmed.

*Daniel W. Lawler* and *John M. Blakeley*, for appellant.

*McLaughlin & Boyesen*, for respondent.

MITCHELL, J.

The South Park Foundry & Machine Company (hereinafter called the "Machine Company") and the Chicago Great Western Railway Company (hereinafter called the "Railway Company") were, and for years had been, customers of the Bank of Minnesota (hereinafter called the "Bank"), with which each of them had an open and current bank account, subject to check.

On December 7, 1896, the Machine Company drew its draft for $910.71, payable in 30 days to its own order, on the Railway Company, which the Railway Company accepted on the same day. On the next day the Machine Company indorsed the draft, by an unrestricted indorsement, and delivered the same to the Bank, which credited the Machine Company with the amount (less interest to

maturity at 8 per cent.) on its pass book, and on its open and current account in the books of the Bank.

According to the usual course of business, the Machine Company had the privilege of checking against this credit, but as a matter of fact it never exercised the privilege, but had at all times subsequent to this deposit, and at the time the Bank closed its doors, on December 22, a sum to its credit much larger than the amount of the draft.

On the date last named, the Bank being insolvent, the superintendent of banks took possession of its assets, and, upon his petition, receivers of the same were appointed, pursuant to statute. The draft referred to (which was among the assets of the Bank, and not yet due) came into the possession of the receivers.

At the time the Bank closed its doors there was due from it to the Railway Company on its open account a sum in excess of the amount of the draft. The Railway Company refused to pay the draft when it matured, claiming the right to set off against it the amount due to it from the Bank on its deposit account. The Machine Company then appeared in the receivership proceedings, and asked the court to order the receivers to return the draft to it, and charge the amount back against its deposit account. The receivers submitted the facts to the court, and asked its instructions in the premises. The Railway Company, upon the order of the court, appeared, and asked that the petition of the Machine Company be denied, and that the receivers be instructed to charge and offset the amount of the draft against the indebtedness of the Bank to it on its deposit account.

After hearing the evidence the court made its findings of fact and conclusions of law, granting the petition of the Machine Company, and directing the receivers to return the draft to it and charge the amount to its account. From this order the Railway Company appealed.

The court found certain facts, but the substance of them all is to the effect that the draft was delivered to the Bank by the Machine Company for collection and credit, that the credit at the time of the deposit was merely provisional, and, therefore, that the title of the draft never passed from the Machine Company to the Bank.

Under the assignments of error, the only question is whether the evidence justified the findings.

There is evidence that the Machine Company's pass book, which was in the form which had been in common use by the Bank with its depositors for several years, contained on its first page the following notice:

"This bank, in receiving checks or drafts on deposit or for collection, acts only as your agent, and, beyond carefulness in selecting agents at other points, and in forwarding to them, assumes no responsibility;"

That the Machine Company had for years been in the habit of delivering drafts to the Bank, and receiving credit for them on its pass books containing this notice.

It also appeared from the evidence that it had been the usual custom of the Bank, when a draft deposited by a customer, as in this case, was not paid in the usual course of business by the drawee or acceptor, to charge it back to the customer who deposited it, and that the Machine Company knew that this was the rule and custom of the Bank. There was no evidence that in making deposits of drafts the Machine Company ever objected to the terms of the notice contained in its pass book, or to the known custom of the Bank, already referred to, or that it deposited the draft in question under any special agreement.

The rules of law applicable to the case are so fully considered in Re State Bank, 56 Minn. 119, 57 N. W. 336, that it is unnecessary to repeat them. Neither can we discover any material distinction between the facts in that case and those in the present one.

The suggestion is made that the notice in the pass book applies only to drafts payable at points outside of St. Paul. The language of the rule will not admit of this construction.

Reference is also made to the fact that at the maturity of the draft the Machine Company, at the instance of the receivers, waived protest. We discover no particular significance in this, especially when accompanied by a request for a return of the draft. The receivers evidently desired the waiver, as a precautionary measure, to avoid any question being raised with reference to the nature of

the transaction, and the Machine Company gave it at their request.

It is also claimed that there is no evidence that the Machine Company ever assented to the terms of the notice in its pass book, or to the custom of the Bank. It certainly impliedly assented, by not objecting, although it knew of both. It is true that there was no evidence of any particular instance where the Bank charged a draft deposited in this way to the account of the Machine Company, but it does not appear that there was ever any occasion for doing so. Indeed, it affirmatively appears that, so far as the Railway Company is concerned, it always paid its acceptances at maturity. Our conclusion is that the evidence justified the findings of the trial court.

Order affirmed.