## SISSETON LIVE STOCK SHIPPING ASSOCIATION v. DROVERS STATE BANK.[1]

October 23, 1925.

No. 24,693.

**Deposit to "credit of" South Dakota bank passed title to bank of deposit.**
Following Security Bank of Minnesota v. Northwestern Fuel Co. 58 Minn. 141, it is *held* that the deposit referred to in the opinion was absolute and passed the title of the check and its proceeds to the defendant bank.

See Banks and Banking, 7 C. J. p. 642, § 326.

Action in the district court for Dakota county for money had and received. The case was tried before Schultz, J., who dismissed the action. Plaintiff appealed from an order denying its motion for a new trial. Affirmed.

*W. L. Hursh,* for appellant.

*Converse & Converse,* for respondent.

STONE, J.

Action for money had and received by defendant for the use of plaintiff, the former being a South St. Paul bank and the latter a South Dakota corporation with its principal place of business at Sisseton in that state. After a trial without a jury and a decision for defendant, plaintiff appeals from the order denying its motion for a new trial.

The controversy arises over the proceeds of a check for $2,033.59, drawn January 11, 1924, by the "Central Co-operative Commission Association, Trustee" to the order of defendant on the Stock Yards National Bank of South St. Paul. That check represented the proceeds of live stock belonging to plaintiff and sold for it on the South St. Paul market by the drawer of the check. Pursuant to a

[1]Reported in 205 N. W. 447, 206 N. W. 394.

custom prevalent at South St. Paul, and which we assume for present purposes was initiated by defendant, checks such as this drawn on South St. Paul or Twin City banks were immediately deposited by the commission men as agents of the shippers, in some South St. Paul bank, instead of being sent to the shipper for the purpose of collection through the longer and more tedious process of having them go through his home bank and thence back through the usual channels to the drawee bank. Such deposits were not made to the credit of the shipper, but to that of his home bank, so that, as soon as one was made at South St. Paul and the fact communicated to the home bank, the shipper was entitled to the benefit of and to draw against the credit so established.

In this case the deposit was made too late for clearings on Saturday, January 12, 1924. The deposit slip indicated that plaintiff was the depositor, acting through the Central Co-operative Commission Association, the drawer of the check, as its agent. It directed that the amount of the check be placed to the credit "of shipper's bank," the Guaranty State Bank of Sisseton, South Dakota. It was so credited by defendant and the check was cleared and paid by the Stock Yards National Bank, the drawee, on Monday, January 14, 1924. The Guaranty State Bank of Sisseton, it now appears, was insolvent and closed its doors on January 12, 1924. It has not reopened them since.

In this situation, the proceeds of the check having been placed to the credit and gone to the use of the Guaranty State Bank and plaintiff never having had the benefit thereof, it is claimed that the deposit with defendant by its South St. Paul agent on January 12, 1924, was for collection only and did not pass title to the check or its proceeds to defendant. We must hold otherwise. There was nothing about the deposit indicating that it was for collection only. Although defendant may properly be held to have had knowledge that the check was the property of plaintiff, there was nothing to qualify the authorized direction by plaintiff's agent to place the deposit immediately and unconditionally to the credit of the Sisseton bank. That was done and the operation amounted to an ab-

solute assignment of the title of the check and the proceeds to defendant. It is the law that "the title of the money, drafts or other paper" so deposited "immediately becomes property of the bank, which becomes debtor to the depositor for the amount, unless a different understanding affirmatively appears." Security Bank of Minnesota v. Northwestern Fuel Co. 58 Minn. 141, 59 N. W. 987. In this case there is no evidence of any different understanding, except that the Sisseton bank and not plaintiff was to have the credit, which was to be immediate and unconditional.

A circumstance strengthening that conclusion is that drafts were being made frequently, if not daily, by the Sisseton bank on defendant. The latter would not honor such a draft if the result would be an overdraft. On the day of this deposit, the evidence shows, defendant honored such a draft upon the faith of a promise by plaintiff's agent, Central Co-operative Commission Association, that this very deposit would be made later in the day. Without that deposit, there would have been an overdraft by the Sisseton bank. There enters thus an element of estoppel which, however, is not resorted to as a basis for decision. It simply indicates the injustice that would result if plaintiff were permitted, after the transaction and the failure of its home bank, to convert an absolute deposit to the credit of the latter into one for collection only and thereby retroactively deprive defendant of the absolute title which the unconditional deposit vested in it.

This disposes of the case and we find it unnecessary to consider the decision of the trial court insofar as it is based upon the finding that plaintiff was doing business in this state without having been admitted for that purpose under our statutes as a foreign corporation.

Order affirmed.

## ON PETITION FOR REHEARING.

On December 11, 1925, the following opinion was filed:

STONE, J.

Plaintiff's petition for rehearing is denied, but it has received attentive consideration. Its argument is prefaced by these assertions:

"The decision has no foundation either in law or reason. The opinion might read well to one unfamiliar with this case; but it can make little appeal to the understanding of one to whom the facts and law are known.

"The opinion of the court in support of its decision can be divided into five statements * * *. Neither the evidence nor the law will support all or any of said statements."

The main attack is a direct challenge of our statement that "There was nothing about the deposit indicating that it was for collection only." Of course all checks and drafts deposited in other than the drawee bank are deposited primarily for collection, but whether for "collection *only*" is another matter. We note counsel's proposition that defendant, like all other banks these days, in receiving checks for collection and credit, acts only as its customer's agent. "All items are received at the owner's risk, and, if credited, shall be credited conditionally subject to payment, and may be charged back at any time until the proceeds thereof in money have been actually received by the bank in which the items are first deposited." Compare Semingson v. Stockyards Nat. Bank, 162 Minn. 424, 203 N. W. 412. That proposition is now irrelevant because the check was paid and defendant received the proceeds in due course. As a result, defendant became debtor either to plaintiff or to the Sisseton bank. It did not become debtor to both. The deposit was not for the credit of plaintiff, nor for that of plaintiff and the Sisseton bank jointly. *It was for the credit exclusively of the latter.* How comes it then that plaintiff now claims the credit?

Counsel's answer is that Exhibit 5, a written direction from plaintiff to its agent at South St. Paul, was to "deposit the proceeds of our live stock shipments" with defendant "to the credit of the Guaranty State Bank of Sisseton, S. D., *for our account.*" Upon the

italicized words counsel bases his assertion that our decision, otherwise unobjectionable, is contrary to both the facts and the law. It was in compliance with Exhibit 5 that plaintiff's agent, The Central Co-operative Commission Association, made the deposits in question under the deposit slip referred to in the opinion, directing that the deposit go to the credit of "shipper's bank", i. e. the Sisseton bank *named by plaintiff* for the very purpose of receiving such credit.

Counsel's argument is that Exhibit 5 did not give defendant's agent "any authority to make unqualified deposits in favor of the Sisseton bank against which it could draw for any purpose for which it might desire * * * , and it was its [defendant's] duty to see that the deposit was not diverted to the checking account of the Sisseton Bank."

There is the point of divergence. Our opinion is that the direction to make such deposits with defendant "for the credit" of the Sisseton bank meant what it said. They were not to be made, and there was nothing in the case indicating that they were made, to any *joint* account with defendant of both plaintiff and its bank at Sisseton. There was no such account. They were in fact made to the credit generally of the latter bank. That is the proof. The Sisseton bank had but one account with defendant and that a general one. Over the disposition of that account, drawn on currently from day to day by the Sisseton bank, defendant had no control. Under such circumstances, the suggestion that defendant was under the duty of superintending and so responsible for the Sisseton bank's disposition of the credits so received by it would be surprising to bankers or anyone familiar with the manner in which such business is always transacted.

Counsel may still insist that the foregoing gives no effect to that portion of Exhibit 5 requiring that such deposits, while going to the credit of the Sisseton bank, were to be for plaintiff's "account." Again the answer is not wholly a matter of law, but more of plain fact and business sense. Plaintiff had no account with defendant. Its account was with the Sisseton bank and it was in that account and nothing short of that account, where plaintiff's credit, both as

matter of obligation and accounting, would appear first as well as ultimately. Any deposit once so passed to the credit of the Sisseton bank could not be reclaimed by the plaintiff except in subordination to the right of that bank. Inasmuch as it is not a party to this case, we cannot question or divest its title in favor of plaintiff or anyone else. The direction of Exhibit 5, that such deposits were for the "account" of plaintiff, was for the Sisseton bank, so that on receipt of the proper and customary advice it could make the accounting entries necessary finally to record the transaction and establish the ultimate debit against itself and the ultimate credit in favor of its customer, in this case plaintiff. The phrase in question is as restrictive as claimed, but its restrictive force operated on the Sisseton bank and not at all on defendant. The latter's full duty was performed when, as directed by plaintiff itself, the money was passed to the credit of the Sisseton bank.

That brings us back to that portion of Exhibit 5 directing deposits "to the credit of" the Sisseton bank. That meant, of course, a "credit in cash" and was equivalent to a final and unqualified direction to "pay over the money." Ellison v. Collingridge, 9 C. B. 570 (573). In that case an instrument directing a cash "credit" to a named firm was held to be a bill of exchange in favor of the latter and in that character a recovery was allowed thereon notwithstanding that the credit was expressly directed to be made "on account of" the defendant, drawer of the bill.

To our minds the simplicity of the case forbids further search for and examination of the authorities. We have re-examined all of those cited for plaintiff, particularly In re State Bank, 56 Minn. 119, 57 N. W. 336, 45 Am. St. 454; Security Bank of Minnesota v. N. W. Fuel Co. 58 Minn. 141, 59 N. W. 987; South Park F. & M. Co. v. C. G. W. Ry. Co. 75 Minn. 186, 77 N. W. 796. The first and last of these cases are obviously distinguishable because both involved the title to uncollected drafts *provisionally credited* to the depositor. The issue in each case was between the depositor and the bank. Title had not passed to a third party. As indicated by the original opinion, we consider the case of Security Bank of Minnesota v. N. W. Fuel Co. controlling. There the check in question had been in-

dorsed "for deposit * * * to the credit of" the depositor and thereby, it was held, title passed. Inasmuch as the deposit here in question was for the credit of the Sisseton bank, we see no way of escaping the conclusion that thereby title to the check and its proceeds passed.

If this reconsideration of the case seems unnecessary or too lengthy, let its excuse be our respect for the sincerity and seeming conviction attending the presentation, particularly by the petition for rehearing, of the argument which we have attempted to answer. We have endeavored to set forth the simple facts of the case and must leave it for others to determine whether our views "make little appeal to the understanding of one to whom the facts and law are known," as averred by counsel for plaintiff, or whether, on the other hand, they carry some degree of persuasion if not conviction.