GEORGE ANDREWS v. FIRST NATIONAL BANK OF TAMPA.

155 So. 143.
Division B.
Opinion Filed May 25, 1934.

*Holland & Bevis* and *Gordon Petteway,* for Plaintiff in Error;

*Taliaferro, Morris & Carter,* for Defendant in Error.

BROWN, J.—The plaintiff in error, George Andrews, plaintiff in the court below, brought suit against the defendant in error, The First National Bank of Tampa, and in his declaration alleged that:

"Heretofore, on the 10th day of May, A. D. 1929, the plaintiff was the owner of a certain check bearing date May 10, 1929, in the sum of $1,977.78, payable to the order of George Andrews, the plaintiff herein, drawn by one John H. Jeffries on Lake Alfred State Bank located at Lake Alfred, Florida, and on said date the plaintiff did endorse said check and deposit same with the First State Bank of Winter Haven, located at Winter Haven, Florida, and that thereupon the First State Bank of Winter Haven did give the plaintiff provisional credit upon its books of account for the amount of said check and on the same day did endorse said check to order of any bank or banker and transmit the same together with other items in cash letter to the defendant, The First National Bank of Tampa, for collection and credit. That the said defendant upon receipt of the said check did credit the account of the First State Bank of Winter Haven with the amount of said check and other items so received and in due course did transmit said check, together with other items so received, for collection and credit to its correspondent, the Atlantic National Bank of Jacksonville, Florida, which latter bank did in due course forward the same to Lake Alfred State Bank, the drawee of said check, for payment; that the said Lake Alfred State Bank did receive said check on or about May 14, 1929,

charged the same to the account of the said John H. Jeffries, marked it paid and did thereafter deliver it to the said John H. Jeffries; that the said Lake Alfred State Bank did on or about said May 14, 1929, remit the proceeds of said check to the said Atlantic National Bank of Jacksonville by its draft drawn on the Citizens Bank & Trust Company of Tampa, Florida.

"That on the 15th day of May, 1929, the Lake Alfred State Bank and the First State Bank of Winter Haven, being insolvent, suspended operations by virtue of an order of the State Banking Department of the State of Florida, and at that time the said First State Bank of Winter Haven did have a balance to its credit upon the books of account of the First National Bank of Tampa in an amount greater than the amount of said Jeffries' check.

"That said remittance draft on the Lake Alfred State Bank was not presented to the Citizens Bank & Trust Company of Tampa for payment until on or about the 16th day of May, 1929, at which time said draft was dishonored and payment refused because of the suspension of operations of the said Lake Alfred State Bank. That upon refusal of the said Citizens Bank & Trust Company to pay the remittance draft so drawn by Lake Alfred State Bank, the said Atlantic National Bank charged the amount of said Jeffries' check back to the defendant, The First National Bank of Tampa, and said defendant bank did in turn and on or about May 16, 1929, charge the same back to the account of First State Bank of Winter Haven and on June 14, 1929, the Liquidator or Receiver of the said First State Bank of Winter Haven, did charge the same to the account of the plaintiff.

"That thereafter said Atlantic National Bank of Jacksonville did file with the Liquidator or Receiver of the Lake Alfred State Bank, a claim for the amount of said check,

which claim was allowed as a preferred claim and the proceeds thereof remitted to said Atlantic National Bank of Jacksonville, which thereupon, on or about August 22, 1930, forwarded said proceeds to the defendant, The First National Bank of Tampa. That at the time the defendant, The First National Bank of Tampa, received the proceeds of said claim, the account of the First State Bank of Winter Haven with said defendant bank was overdrawn and the defendant bank did thereupon hold such proceeds and credit the amount thereof to the account of the First State Bank of Winter Haven in reduction of the overdraft aforesaid.

"That under the facts and circumstances aforesaid, the plaintiff was the owner of said check and the defendant was the plaintiff's agent for the purpose of collecting the amount thereof for the plaintiff; and that the proceeds so derived by the defendant from the collection of said check rightfully belongs to the plaintiff; and that the defendant wrongfully and without authority credited the same after such collection in reduction of its over-draft against the First State Bank of Winter Haven as aforesaid, and wrongfully and without authority withholds from the plaintiff, the true owner thereof, the proceeds so derived as aforesaid. That although due and proper demand has been made by the plaintiff upon the defendant for the payment of said check so collected as aforesaid, yet said defendant has failed and refused and still fails and refuses to pay to the plaintiff the amount of said check so collected as aforesaid.

"Wherefore the plaintiff brings this action and claims damages in the sum of $4,000.00."

A demurrer to this declaration was overruled and the defendant filed several pleas, only the 4th, 5th and 6th being material here. These pleas read as follows:

"4.   That on and prior to May 15, 1929, it was the regular correspondent in Tampa, Florida, of First State Bank of Winter Haven, a State banking corporation now in liquidation hereinafter referred to as the Winter Haven Bank; that said Winter Haven Bank from time to time had balances to its credit with this defendant but that this defendant carried no balances or account on the books of said Winter Haven Bank; that from time to time during said period this defendant received items from said Winter Haven Bank with instructions to collect the same and credit its account with this defendant in the amount of the proceeds; that from time to time in regular course and custom of dealings between said banks, provisional credits were given by this defendant to said Winter Haven Bank prior to the actual collection of said items subject to final payment; that this defendant was not indebted to said Winter Haven Bank on the 15th day of May, 1929, or subsequent thereto in any amount whatsoever; that on the contrary, although credit balances appeared on its books in favor of said Winter Haven Bank on said May 15, 1929, such credit balances were mere provisional credits subject to final payment of items making up said credit; that said balances arose by the granting and extending by this defendant of provisional credit on its books for items sent to it by said Winter Haven Bank for collection and credit, but which had not then been collected; that subsequent to May 15, 1929, items which were so credited subject to final payment were returned to this defendant unpaid and that thereupon this defendant returned to said Winter Haven Bank items returned to it unpaid, charging the amount thereof against the credit balances of said Winter Haven Bank; that the said credit balances were used up and exhausted by charging back to said Winter Haven Bank the items so returned to said Winter

Haven Bank; that after the Jeffries check was received from and credited to the account of said Winter Haven Bank by this defendant, endorsed as set forth in the declaration but before May 15, 1929, and before the same could be actually collected, said Winter Haven Bank withdrew from its said account funds in excess of said Jeffries' check; that this defendant either paid the said Winter Haven Bank the face amount of each and every item forwarded to it for collection and credit, or else returned to said Winter Haven Bank each and every item it did not pay, funds so paid being actually withdrawn by said Winter Haven Bank; that this defendant actually paid the Winter Haven Bank the amount of the Jeffries check prior to its collection and was without the use of the money so paid out and was not repaid and reimbursed for the advance so made by it to said Winter Haven Bank until during August of the year 1930, although the Winter Haven Bank had closed its doors on or about May 15th of the preceding year, on which said date it received the amount of the Jeffries check as a preferred claim, and that the said Winter Haven Bank, the plaintiff, and any one for whom said bank was acting have no claim against this defendant, any such claim having been paid and discharged as aforesaid.

"5. That on and prior to May 15, 1929, it was the regular correspondent in Tampa, Florida, of First State Bank of Winter Haven, a State banking corporation now in liquidation, hereinafter referred to as the Winter Haven Bank; that said Winter Haven Bank from time to time had balances to its credit with this defendant but that this defendant carried no balances or account on the books of said Winter Haven bank; that from time to time during said period this defendant received items from said Winter Haven bank with instructions to collect the same and credit its account with

this defendant in the amount of the proceeds; that from time to time in regular course and custom of dealings between said banks, provisional credits were given by this defendant to said Winter Haven bank prior to the actual collection of said items subject to final payment; that from time to time this defendant permitted the said Winter Haven bank to withdraw funds from the said credit balance prior to the actual collection of the items on which said credit balances were based; that after the receipt of the Jeffries item in question but before the actual collection thereof, this defendant credited the account of the Winter Haven bank with the amount of the said item, and permitted the Winter Haven bank to withdraw from its said account sums equal to or in excess of the amount of the Jeffries check; that the funds so withdrawn by the said Winter Haven bank were permitted to be withdrawn by this defendant in reliance upon the payment of the said Jeffries check by the bank on which it was drawn and in reliance on payment of other items being handled by this defendant for collection on which credit had been given to said Winter Haven bank, said credit thus given having been exhausted by the withdrawal of sums in excess of the amount of said Jeffries check and by charging back and returning to said Winter Haven bank, each and every other item in process of collection returned to this defendant unpaid; that the said Winter Haven bank actually withdrew from its account with this defendant after the receipt of the said Jeffries check by this defendant and prior to the closing of said Winter Haven bank sums in excess of the amount of the Jeffries check; that thereafter all of the items being handled for collection and credit by this defendant and with the exception of the Jeffries check upon being returned to this defendant unpaid were in turn by this defendant re-

turned to said Winter Haven bank and the said Winter Haven bank has either been paid in full by actual withdrawal of funds from its account with this bank, or by the actual return to said Winter Haven bank of the items returned to this bank unpaid for each and every item being handled by this defendant for the said Winter Haven bank at the date of its closing, that this defendant is not indebted to said bank of Winter Haven in any amount, and that the proceeds received by it as a preferred claim in connection with the Jeffries check are and constitute a payment to it of funds so paid to said Winter Haven Bank on account of the said Jeffries check prior to the actual collection thereof, this defendant having received no other reimbursement or repayment on account of the said advances.

"6.  That it received the Jeffries check in question from the First State Bank of Winter Haven endorsed in the manner set forth in the declaration with instructions from the said First State Bank of Winter Haven to collect the item and credit the account of said First State Bank of Winter Haven with the amount thereof, and that before the institution of this action this defendant discharged and satisfied any claim of said First State Bank of Winter Haven, and the claim of any one for whom said bank was acting in the premises, including the plaintiff against this defendant by payment."

The plaintiff demurred to these pleas upon several grounds, among them being that said pleas show that there were no reciprocal accounts between the Winter Haven bank and the defendant bank; that it is apparent upon the face of said pleas and each of them that each of the items therein referred to were received by the defendant merely for collection and that the provisional credit given for each item did not become unconstitutional until final payment of

the item was received; that it affirmatively appears from each of the pleas that at the time of the insolvency of the Winter Haven bank, the defendant was indebted to it in a sum in excess of the amount of the Jeffries check, as shown by its own books of account against which indebtedness the Winter Haven bank was permitted to draw; that it affirmatively appears upon the face of the pleas that the credit balance which the Winter Haven bank had with the defendant on the 15th day of May, 1929, was exhausted not by actual withdrawal by the Winter Haven bank, but by the cancellation thereof by the defendant; that the pleas admit that the Jeffries check was charged back by the defendant against the account of the Winter Haven bank before the collection thereof; that it is not alleged that the Winter Haven bank withdrew funds equal to or in excess of its credit balances with the defendant at any time, and that it affirmatively appears upon the face of said pleas that the plaintiff was the owner of the check in question, and that defendant was merely an agent for the purpose of collection and that the plaintiff is entitled to the proceeds of said check, which it is shown by the pleas were not actually collected and final payment received until after the insolvency of the Winter Haven bank; that the facts set forth in said pleas do not constitute payment to the plaintiff or to any one for and on his behalf duly authorized.

This demurrer to the 4th, 5th, and 6th pleas was overruled. The plaintiff thereupon filed replications to said pleas, reading as follows:

"I.

"That at the time the defendant received the check mentioned in said pleas from the First State Bank of Winter Haven it did not purchase said check or pay a present valuable consideration therefor, but merely credited the amount

thereof to the account of the said First State Bank of Winter Haven subject to final payment as set forth in said pleas, and that the amount so credited was not absorbed by an existing debt of the First State Bank of Winter Haven, neither was the amount thereof subsequently exhausted by checks or drafts or other forms of requisition of the First State Bank of Winter Haven. The plaintiff avers that the account of the First State Bank of Winter Haven was never overdrawn but that the First State Bank of Winter Haven had a balance to its credit upon the books of account of the defendant in excess of the amount of said check continuously from the day the said check was received by the defendant from the First State Bank of Winter Haven until the time of the suspension of business by the First State Bank of Winter Haven and that at all times from the time the defendant received said check until the time the First State Bank of Winter Haven suspended business the account of the First State Bank of Winter Haven with the defendant continued to be sufficient to pay said check in case of dishonor.

"WHEREFORE the plaintiff says that the defendant did not become a holder in due course of said check.

"II.

"Further replying to the defendant's fourth and fifth pleas, the plaintiff says that the funds, if any, paid by the defendant to the Winter Haven Bank after receiving the check in question and prior to the suspension of business of the Winter Haven Bank were not in payment of said check or on the faith thereof because the Winter Haven Bank continuously from the time of the negotiation of said check until the time it suspended business, had a balance to its credit upon the books of account of the defendant in excess of the amount of the said check.

## "III.

"Further replying to the defendant's fourth and fifth pleas, the plaintiff says:

" 'That although the defendant gave the Winter Haven Bank credit for the amount of said check as alleged in said pleas, the Winter Haven Bank did not draw against said credit because continuously from the time such credit was given until the suspension of business by the Winter Haven Bank, the latter had to its credit with the defendant a balance in excess of the amount of said check.'

## "IV.

"Replying to the defendant's sixth plea, the plaintiff denies that the defendant has satisfied and discharged the plaintiff's claim by payment."

The defendant demurred to the first, second and third replications upon various grounds, alleging that the replications did not set forth any new or material matter to overcome the allegations in the declaration and the pleas showing that the defendant was a holder in due course of said check; that said replications did not constitute a sufficient reply to the pleas of the defendant which allege that credit was given by the defendant to the Bank of Winter Haven for the full amount of the item prior to the collection thereof; that prior to the collection of the item the said bank of Winter Haven was indebted to the defendant bank in a greater amount than the amount of the item; that funds were advanced by the defendant to the Winter Haven bank on the faith of the item and that the defendant has received no other repayment of funds so advanced by it other than by the receipt of the proceeds from the item; that each of said replications fails to allege new matter constituting a sufficient reply to the allegations of the pleas that the item was deposited with the Winter Haven bank by the

plaintiff without any restrictive endorsement, that the said Winter Haven bank duly endorsed said check to the order of any bank or bankers without any restrictions whatever and duly transmitted the same to the defendant in a cash letter for collection and credit of the Winter Haven bank and that the amount of the item was credited to the account of said Winter Haven Bank and that said credit was withdrawn and used by said Winter Haven Bank before the proceeds of said check were realized by the defendant.

This demurrer of the defendant to the plaintiff's first, second and third replications to the defendant's fourth and fifth pleas was sustained, and the plaintiff refused to amend or further reply, judgment was rendered against the plaintiff thereon, and in favor of the defendant. This judgment the plaintiff has brought before us for review.

The errors assigned are based on the action of the trial court in overruling the plaintiff's demurrer to the defendant's pleas, and in sustaining the defendant's demurrer to the plaintiff's replications to the defendant's fourth and fifth pleas, and in entering the final judgment on demurrer against the plaintiff.

In his order overruling the demurrer to the defendant's pleas, the learned trial judge said that "the pleas aver sufficient matter to make the defendant a holder in due course of the check involved in this litigation," and that "Section 6834, Compiled General Laws of Florida, 1927, does not affect defendant's position as a holder in due course." Said Section 6834 reads as follows:

"When a check, draft, note or other negotiable instrument is deposited in a bank for credit, or for collection, it shall be considered due diligence on the part of the bank in the collection of any check, draft, note or other negotiable instrument, to forward enroute the same day without delay

in the usual commercial way in use according to the regular course of business of banks, and the maker, endorser, guarantor or surety of any check, draft, note or other negotiable instrument, so deposited, shall be liable to the bank until actual final payment is received, and when a bank receives for collection any check, draft, note or other negotiable instrument and forwards the same for collection, as herein provided, it shall only be liable after actual final payment is received by it, except in case of want of due diligence on its part as aforesaid."

By sustaining the demurrer to plaintiff's first, second and third replications, the court below in effect held that the facts alleged therein were not sufficient to overcome the allegations of the defendant's pleas, which the court held showed the defendant to be "a holder in due course." Plaintiff in error, *per contra,* contends that the defendant was not a holder in due course, but that the relationship existing between the plaintiff depositor and the initial bank of deposit was that of principal and agent, and that as between the plaintiff and the defendant, the correspondent bank, the relation was also that of principal and agent, or sub-agent; that the plaintiff remained the owner of the check in question until actual final payment thereof was received by the initial bank of deposit and that the sub-agent (defendant) was directly responsible to the depositor (plaintiff) for the proceeds. This question, and all other questions raised by the pleadings, have been ably and thoroughly briefed and argued by counsel for both sides, and in strict accordance with Rule 20 as amended; which has been very helpful to the Court.

We think that the contention of plaintiff in error as to the relationship existing between the plaintiff and the initial bank of deposit is sustained by the weight of authority and

by certain of our own cases. It is true that in the case of Brown v. The People's Bank, 57 Fla. 163, 52 So. 719, it was held that in the absence of a controlling statute or agreement, where a check payable in another city is endorsed in blank and deposited with a bank to be credited to a depositor, the bank selects its agent for collection at its own risk, and if the check is paid, the bank of deposit is liable even though the collecting agent does not remit the collection. The case arose before said Section 6834, which was Section I of Chapter 5951, approved June 8, 1909, was adopted, but the decision was handed down after the adoption of the Act, and it was observed in the opinion that the statute referred to "was manifestly designed to change the existing rule," but "being prospective merely, does not affect this case."

See also Montsdoca v. Highlands Bank & Trust Company, 85 Fla. 158, 95 So. 666-667. In the course of the opinion in that case by Mr. Justice WHITFIELD, it was said: "This statute makes the bank in which a check is deposited for deposit or collection, liable only after actual payment is received by it, unless it is negligent in its duty according to the regular course of business of banks."

The first three headnotes in the case of Edwards v. Lewis, 98 Fla. 956, 124 So. 746, read as follows:

"1. Section 6834, Comp. Gen. Laws of Fla., changed the existing rule, and now a bank in which a check is deposited, for deposit or collection, is liable only after final payment is received by it, unless it is negligent in its duty according to the regular course of business of banks.

"2. Under the statute (Sec. 6834, Comp. Gen. Laws of Fla.) the relationship of the depositor of commercial paper with his bank of deposit, even though the deposit is not for collection, is in the nature of principal and agent, until such

paper has been collected and payment actually received by the bank in which event the depositor becomes the creditor of his bank, the debtor.

"3. Under the Florida statute, the initial bank of deposit of commercial paper, by the mere fact of deposit for collection, is authorized to employ sub-agents of the owner, who become directly responsible to him for their defaults."

In the recent case of Florida Power & Light Co. v. Newsom, 149 So. 621, 111 Fla. 154, this Court, speaking through Mr. Justice TERRELL, said:

"Section 4748, Revised General Statutes of 1920 (Section 6834, C. G. L.), had the effect of writing into Florida law what is generally known as the Massachusetts rule of liability in respect to out-of-town paper, checks, or other items taken by a bank for collection; that is to say, any bank in Florida receiving commercial paper in the usual course for collection and remittance takes it as agent of the maker or the owner ,and holds the proceeds in trust for him. Edwards v. Lewis, 98 Fla. 956, 124 So. 746. It is also true under this rule that banks receiving items for collection may select other banks to act as sub-agents for the owner, and that banks so selected become the agent of the owner of the paper and not the agent of the forwarding bank. City of Miami v. First National Bank of St. Petersburg. (C. C. A.) 58 F. (2d) 561. In the Federal and some State jurisdictions, what is known as the New York rule of liability in respect to out-of-town paper applies and where this is true the bank receiving items for collection and remittance becomes the agent of the forwarding bank rather than the maker which bank is alone responsible to the owner. First National Bank of Denver v. Federal Reserve Bank of Kansas City, Mo. (C. C. A.) 6 F. (2d), 339, text 341."

"The rule seems to be general that ownership of com-

mercial paper is not concluded by the fact that before collection the amount of it was credited to the customer's account, against which he may draw or check. The authorities almost with unanimity hold that, if such paper is delivered to a bank by a customer for collection or for collection and credit, a credit of the amount to the customer before and in anticipation of collection will be deemed merely provisional, and the privilege of drawing against it gratuitous, and that the bank may cancel the credit, or may charge back the paper to the customer's account, if not paid by the maker or drawer. *In re* State Bank of Fletcher v. Osborn, 56 Minn. 119, 57 N. W. 336, 45 Am. St. Rep. 454; Commerce Trust & Savings Bank of Chicago, Ill., v. Schuler (Mo. App.) 27 S. W. (2d) 492; Alexander v. Birmingham Trust & Savings Company, 206 Ala. 50, 89 So. 66, 16 A. L. R. 1079; First National Bank of Blanchester v. Stengel (Sup.), 160 N. Y. S. 217, text 220; Washington Brick, Lime & Mfg. Co. v. Traders' National Bank, 46 Wash. 23, 89 P. 157, 123 Am. St. Rep. 912."

While the facts in the instant case are not in all respects similar to those involved in the above cited cases, we think that this case falls within the principles enunciated in those cases and that the relationship of the plaintiff with the initial bank of deposit, the Winter Haven bank, was that of principal and agent, and that the defendant, the First National Bank of Tampa, received the check in question as the agent of the owner thereof. It will have been observed that the declaration alleges that the plaintiff was the owner of the check, that it was made payable to his order, having been drawn by one Jeffries on the Lake Alfred State Bank, and that the plaintiff endorsed the check and deposited it with the Winter Haven Bank, which gave him *provisional* credit therefor upon its books and on the same day endorsed the

check to the order of any bank or banker and transmitted the same to the defendant bank in a cash letter with other items "for collection and credit." These allegations are not denied by the defendant's pleas. So we think this case falls within the rules above quoted from our previous decisions. See also in this connection Federal Reserve Bank v. Malloy, 264 U. S. 160, 86 Law Ed. 617.

If, as appears from our above cited cases, the defendant, the correspondent bank, received the check in question as an agent for the depositor, the plaintiff here, the question suggests itself whether, if indeed such a thing were possible under our statutes, anything occurred after the receipt by the defendant of the check in question and before its collection, which would have the effect of changing its relationship from that of an agent for the depositor to that of a holder in due course, so as to give it the right to retain the proceeds of the check against such original owner and depositor. Defendant in error contends very strongly that, on the facts set forth in its above quoted pleas, and regardless of the facts alleged in the plaintiff's declaration not denied by the pleas, and regardless of the facts alleged in the plaintiff's replication to the pleas, the truth of which were admitted by the demurrer, the defendant was a holder in due course of the check in question and entitled to retain the proceeds of the check when collected as against such original owner and depositor. The defendant in error insists that its position in this respect is squarely upheld by the principle announced in the second headnote in the case of Winfield National Bank v. McWilliams, 60 Pac. (Okla.) 229, which reads as follows:

"Where a bank in the due course of business receives from a correspondent bank a check endorsed in blank and in good faith parts with value or permits an existing indebted-

ness to remain unpaid by reason thereof, it is entitled to the proceeds of such check against the real owner, even though the check was not actually collected by such bank until after the failure of the bank which transmitted the same to it."

, Defendant in error also cites in support of this position Lightfoot v. Bunnel, 76 P. Super. Ct. 468; Bank of Metropolis v. New England Bank, 1 How. 235, 11 L. Ed. 115; Bland v. Fidelity Trust Company, 71 Fla. 499, 71 So. 639; American Fruit Growers v. Chase National Bank, 30 Fed. (2d) 936; also an annotation appearing in 49 A. L. R. at page 1373 which reads as follows:

"It is generally recognized that as between one who deposits for collection commercial paper payable to bearer, indorsed in blank as not restricted for collection and one who takes it from the bank or depositary, *i. e.,* to balance the account upon some other valuable consideration and without notice of the defect in title of the bank or depositary, the subsequent holder is entitled to priority over the true owner."

In addition to this, the defendant in error also cites Cody v. City National Bank, 21 N. W. 373; Vickery v. State Savings Association, 21 Fed. 773; Wyman v. Colorado National Bank, 5 Col. 30; Italian American Bank v. Carosella, 254 Pac. 771; Blacher v. National Bank of Baltimore, 135 Atl. 383, 7 C. J. 625.

Putting aside for the moment the operative effect of Section 6834, C. G. L., upon the facts alleged in the pleadings in this case, we conceive the general rule in other jurisdictions which have no such statute to be that where a correspondent bank seeks to hold commercial paper or its proceeds for advances made by it to the remitting bank, or for balance of account due it from such remitting bank, the rule

is that if the correspondent bank, without notice or knowledge that the paper is the property of the depositor, became a purchaser for value, it will be protected, even as against the real owner. It also appears to be a general rule that a blank or unrestricted indorsement is *prima facie* evidence of ownership in the indorsee, and in itself would not be notice to the correspondent bank that the paper was deposited with the remitting bank for collection only, and that the latter has no title; that, on the other hand, an endorsement which specified the deposit with the remitting bank to be "for collection" is notice to all parties that the depositary is not the owner of the paper so indorsed; but whatever the form of the indorsement, if the correspondent bank had notice that the paper was not that of the remitting bank, but was deposited with it for collection only, it will not be entitled to retain the proceeds of such paper as against the real owner. See note contained in 86 A. S. R. 791, and 3 R. C. L., pages 585-586, 636 and 637, and Josiah Morris & Co. v. Alabama Carbon Co., 139 Ala. 620, 36 So. 764. And where no new credit is given or advances are made, and the dealings between the parties do not establish the fact that credit was given on the faith of the paper transmitted or expected to be received, the collecting bank has no right to retain the money as against the real owner. 3 R. C. L. 638.

Under Section 6811, C. G. L., in order to be a holder in due course, one must have taken the paper in good faith and for value, and without notice of any infirmity in the instrument or defect in the title of the person negotiating it.

The correspondent bank in this case was charged with knowledge of our Florida statute above quoted, and under said statute, as this Court has held in Edwards v. Lewis, *supra,* the relationship of the depositor·of commercial paper

with his bank of deposit, though the deposit is not expressly for collection, is that of principal and agent. Therefore, the defendant took this check with notice of the fact that the Winter Haven Bank, in transmitting the check to it, was acting, not as the owner of the check, but as agent for the depositor and owner, the plaintiff in the court below.

But aside from our statute, the correspondent bank in this case does not appear, from the pleadings, to have been a purchaser for value and without notice of the want of title of the forwarding bank. At the time the defendant received the check in question from the initial bank of deposit, it did not pay a present consideration therefor, but received it "for collection and credit" and merely gave the Winter Haven bank provisional credit therefor, subject to final payment. The replications aver that at all times from the time the defendant received the check until the Winter Haven bank closed, the latter bank had a balance to its credit upon the books of the defendant in an amount greater than the amount of this check, and that although the Winter Haven bank during that time was permitted by the defendant bank to draw against such credit balance, that balance was at no time overdrawn, but that the bank of Winter Haven had a balance to its credit upon the books of the defendant bank in excess of the amount of said check from the time the check was received by it until the suspension of business by the Winter Haven bank. It is true that the defendant's pleas allege that the defendant permitted the Winter Haven bank to draw from its account with the defendant in excess of the amount of the Jeffries check in reliance upon the payment of the Jeffries check "and other items" being handled by the defendant for collection, on which credit had been given to the Winter Haven bank, prior to its closing, and that thereafter all the items

which the defendant had handled, with the exception of the Jeffries check, upon being returned to the defendant unpaid, were by the defendant returned to the Winter Haven Bank, and that the Winter Haven Bank had either been paid in full by actual withdrawals of funds or by the actual return to said bank of the unpaid items. And right here it might be mentioned that the declaration alleges that this Jeffries check was also charged back by the defendant against the Winter Haven bank on the day after the Winter Haven bank and the Lake Alfred bank suspended operations, on account of insolvency. This allegation of the declaration, not being denied by the pleas, is therefore admitted. It will also be noted that the withdrawals which the defendant permitted the Winter Haven bank to make were, according to the pleas, not upon the strength of this check alone, but "in reliance upon the payment of said Jeffries check and other items being handled by the defendant for the Winter Haven bank." That the Jeffries check and other items were merely provisionally credited is indicated by the fact that they were charged back against the Winter Haven bank as soon as dishonored.

In Armstrong v. Boyertown National Bank (Ky.), 9 L. R. A. 553, the Kentucky Court made a very sensible observation, as follows:

"But it is well settled, that where a bank receives a draft or note 'for collection on account' or, what is the same, *'collection and credit,'* it does not owe the amount until collected; and, though credit be given therefor prior to collection, the bank is not precluded from cancelling such credit, which is regarded as merely provisional, if the paper is dishonored. It would therefore seem just and reasonable, even if there was no authority to support the position, that if the bank does not, in such case, owe the amount before it is

actually collected, it should not be held to have any other right to it than as agent, and that if not bound by an entry of credit, it should not have power to bind the real owner thereby."

See also in this connection, National Park Bank v. Seaboard Bank, (N. Y.) 20 N. W. 632, 11 A. S. R. 612; O'Hara v. Texas National Bank, 299 S. W. 649.

The mere fact that the defendant credited the amount of the check to the Winter Haven bank in no way changed its position to its detriment, but even if it had, yet when it later charged back the amount of the check to the account of the Winter Haven bank, any prejudice to it up to the amount of said check was wiped out and the defendant placed in its original position, unless it could be shown that the defendant had in the meantime actually advanced money to or allowed withdrawals by the Winter Haven bank on the strength of this particular check. As was said *In re* State Bank, 56 Minn. 119, 45 Am. St. Rep. 454, 57 N. W. 336:

"It is not conclusive upon the question of ownership of the paper that before collection the amount of it is credited to the customer's account, against which he has had the privilege of drawing by check.

"It has frequently been held with the approval of the best text writers, that if paper is delivered by a customer to a bank for collection, or for collection and credit, a credit of the amount to the customer before and in anticipation of collection will be deemed merely provisional and the privilege of drawing against it merely gratuitous and that the bank may cancel the credit or charge back the paper to the customer's account if it is not paid by the maker or drawee."

So the mere fact that the defendant, prior to collection, credited the account of the Winter Haven bank with the amount of the check, did not in and of itself constitute the

defendant a purchaser for value. Nor did the fact that the defendant permitted the Winter Haven bank to draw against its credit balance with the defendant, render the defendant a purchaser for value, in view of the allegations in the replications to the effect that such credit balance was never at any time, prior to the suspension of the Winter Haven bank, reduced to or below the amount of the check in question. In arriving at this conclusion we are relying largely upon a strong opinion rendered by Chief Justice ANDERSON in the case of National Bank of Commerce v. Morgan, 207 Ala. 65, 92 So. 10. The headnote in that case reads as follows:

"If a bank, with which a draft was deposited by the drawer, was a purchaser and not a mere collecting agent, it was nevertheless not a *bona fide* purchaser for value, where the depositor continuously from the negotiation of the draft until garnishment of the proceeds, had a balance on deposit in excess of the amount of the draft."

See also Colorado Bank v. Western Grain Company of Alabama, 118 So. 588; Union National Bank v. Winsor, 101 Minn. 470, 11 Ann. Cas. 204.

We do not think the case of Bland v. Fidelity Trust Co., 71 Fla. 499, 71 So. 630, is in conflict with the cases just cited. It was held in that case, in general terms, that if a mere credit upon the books of the bank does not itself amount to the payment of a valuable consideration, a withdrawal by check of a substantial part of the amount so credited, is such payment. In that case it appeared that the plaintiff, without notice of any infirmity in the note, discounted the note in question with many others in one transaction and gave the payee credit for $61,150.40, and before the plaintiff knew of the asserted defect in the payee's title the credit had been reduced to less than $30,000.00, showing

that at least one-half of the entire credit had been withdrawn by the payee, which constituted the plaintiff a purchaser for value, it being one of a number of notes embraced in one discount transaction and the withdrawals covering a large portion of the aggregated credit resulting from the single transaction.

When it is shown that the title of any person who has negotiated commercial paper was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. Section 6818, C. G. L. Nowhere in the defendant's pleas does it clearly appear what the condition of its account with the Winter Haven bank was at the time it received the check, or at the time the Winter Haven bank closed. However, this omission was supplied by the plaintiff's replication and under the allegations of such replications we think the court erred in sustaining the demurrer thereto.

The defendant in error contends that the above principles do not apply because the balances to the account of the forwarding bank were provisional credits on items uncollected and which were never collected because of the insolvency of the forwarding bank and which were returned to the forwarding bank. But if all items so received were provisional credits, this check included, then any withdrawals by the initial bank of deposit prior to its insolvency were made against a mere provisional credit balance of which the amount of this check was a part. It does not appear that the withdrawal was made against this particular check to the exclusion of other items. As the withdrawal was against the balance as a whole, the rule that if the account is at no time, between the time credit for the item is given and the time of the insolvency of the initial bank of deposit, reduced below the amount of the particular item in

question, then there has been no withdrawal against the particular item and consequently the correspondent bank was not a purchaser for value of this particular check. The fact that the defendant charged back the check in question manifested the intention that this check was to be treated the same as any other item, and the check here in question would doubtless have been returned along with the other items to the forwarding bank had it not been held by the Lake Alfred bank. The action of the defendant in error in charging back this particular check along with the other included items indicates that it laid no greater claim to this item than it did to the others, and shows an intention upon the part of the defendant to treat the item as being held by it as agent for collection rather than as purchaser for value or a holder in due course. It might also be noted in this connection that the defendant carried no account or balance with the Winter Haven bank, but that the latter carried an account with the defendant. For much the same reason as above given, we cannot concur in the contention of defendant in error that it had a lien on the instrument against the Winter Haven Bank on account of said withdrawals and was therefore a holder for value to the extent of such lien under Section 6787, C. G. L.; for in order to have a lien against an instrument it is necessary that the bank part with value on the strength of such instrument, and it is our view that under the pleadings the bank did not part with value upon the strength of this particular check. And if defendant handled this check as *agent* for plaintiff it could not claim a lien thereon for a debt due it by the forwarding bank. Nor does it seem consistent for the defendant, having charged back the amount of this check to the Winter Haven bank at the time it received notice of its insolvency and thereby reduced a credit balance which the Winter

Haven bank had to the amount of the check, to later seek to hold the proceeds of this same check which it had already charged back to the Winter Haven bank. Thus the pleadings indicate that the defendant was handling this check not as a holder in due course, but as an agent for collection purposes.

Under our Florida statute, the mere fact that the bank of deposit may obtain money from its correspondent prior to actual collection and final payment of a check deposited with it, does not terminate the agency relationship. If this were so, the initial bank would become liable to the depositor for the amount of a check, even though it had not been collected by its correspondent from the drawee bank, whereas, under the statute, so long as the check remains uncollected and unpaid by the bank upon which it is drawn, the initial bank of deposit is not liable to the depositor if it acts with due diligence, and any loss resulting prior to final payment and collection falls upon the depositor. This differentiates many of the cases from other States cited by the defendant in error.

But even if the defendant had given value for the check in question, there is one other essential to the position of a holder in due course, and that is, that the defendant must have acquired the check without notice of any defect in the title of the forwarding bank. It is our view, as above indicated, that under the law of this State, of which the defendant was presumed to have notice or knowledge, it was charged with notice that the check in question, having been transmitted "for collection and credit," was a collection item, and that the forwarding bank was not the owner thereof, but was acting merely as the agent of the owner. This we think is the necessary effect of our own

decisions above cited and also of the case of Federal Reserve Bank of Richmond v. Malloy, 264 U. S. 160, 68 L. Ed. 617.

The correctness of this view is confirmed by a recent case handed down by the Supreme Court of the United States, since the briefs in this case were filed. We refer to the case of Dakin v. Bayly, 54 Sup. Ct. 113, 78 L. Ed. 95 (Advance Sheets). This was an action originating in the United States District Court for the Northern District of Florida by the receiver of the First National Bank of St. Petersburg, Florida, against the People's Bank of Clearwater, Florida. Without prolonging this opinion with a statement of the facts, we need only say that it was held in that case that while generally a check deposited with a bank with an unrestricted indorsement, makes the bank the depositor's debtor, and such checks are collected by the bank as owner, yet, in Florida, forwarding and collecting banks are presumed to have contracted with reference to Section 6834, Comp. Gen. Laws of Florida, being the statute above quoted, which fixes the duty of banks receiving paper for credit or collection, and that under such statute, banks receiving paper for credit or collection act as agents for depositors and become debtors only after receipt of final payment, except where they have failed to exercise due diligence. It was also held in that case that where a bank received paper for collection and forwarded it to another bank for collection, it acted as agent for the depositor, who had a right of action against the sub-agent of the forwarding bank for any default in collection or remittance. It was further held that, in the absence of a showing to the contrary, a bank receiving paper for credit or collection will be presumed to have acted conformably with the statute above mentioned, that is, as the agent rather than as the debtor of the depositor.

See also the recent case of Pearl River Company v. Merchants Bank & Trust Company, (Miss.) 151 So. 756, wherein it is held that in Mississippi, the Massachusetts rule, that every bank receiving paper in process of collection acts as agent for the depositor, obtains, and wherein, also the case of Dakin v. Bayly, above cited, is reviewed with approval.

For the reasons above pointed out, we deem the assignments of error in this case well taken, and the judgment of the court below must accordingly be

Reversed and remanded.

WHITFIELD, P. J., and BUFORD, J., concur.

DAVIS, C. J., and TERRELL, J., concur in the opinion and judgment.